S09A1423, S09X1520. THE STATE v. FOLSOM; and vice versa.
(686 SE2d 239)

MELTON, Justice.

This is the second appearance of this case in this court. In *State v. Folsom*, 285 Ga. 11 (673 SE2d 210) (2009), we set forth the facts of this case as follows:

> Kenneth Doyle Folsom is charged with the kidnapping and murder of Bobby Timms. [The State has filed a direct appeal from the trial court's pre-trial decision to suppress evidence (OCGA § 5-7-1 (a) (4)), and Folsom has filed a cross-appeal. See OCGA § 5-7-1 (b).] On the morning of July 31, 2007, Agent John Cobb of the Georgia Bureau of

Investigation and Officer Perry Glasgow of the Haralson County Sheriff's Department went to Folsom's house with an arrest warrant for Folsom's co-defendant Michael McCain. Although McCain was not at Folsom's house at the time, the officers requested Folsom to come to the local sheriff's office for questioning and Folsom agreed, but said he needed time to shower and dress. The officers left the house. About an hour and a half later, when Folsom did not arrive at the sheriff's department when expected, Agent Cobb and Officer Glasgow returned to Folsom's house. Co-defendant McCain was at the house this time. The officers waited at the house for another hour while Folsom dressed. Folsom then drove himself and McCain to the Sheriff's department as the officers followed in a separate vehicle. Upon arrival, authorities took McCain away and arrested him, while Folsom waited in the lobby.

After waiting an hour in the lobby, Folsom was taken to a small room for an interview which was video recorded. Our review of the recording reveals that Folsom is a heavy-set man who walks laboriously with a cane and uses a portable oxygen tank. The recording also shows that Folsom sat in a corner of the small room away from the door, and could not exit without Agent Cobb moving from his seat and/or exiting the room. Officer Chad Henderson was also in the small room for most of the interview. Agent Cobb questioned Folsom for approximately six hours. For the first two to three hours, Folsom was not told he was under arrest or read *Miranda* warnings. Folsom was also not told he could leave; although he was allowed several bathroom and smoking breaks as long as officers were in close proximity to him. Early in the interview, Folsom told authorities he had taken several prescribed medications.

From their earlier investigation, authorities knew the victim had been shot with a gun similar to a .380 caliber or nine millimeter pistol and that Folsom had been known to own a .380 caliber gun. When asked about his .380 caliber gun during the pre-*Miranda* portion of the interview, Folsom told authorities that he had pawned it. Authorities contacted the pawn shop and learned that the gun was still there. Agent Cobb testified at the motion to suppress hearing that he "[didn't] know" whether Folsom was free to leave at the point authorities became aware that the gun was at the pawn shop. The interview continued and, while it was ongoing, officers retrieved the gun from the pawn shop and proceeded to obtain a warrant for Folsom's arrest.

> Once the warrant was in hand, Folsom received *Miranda* warnings, signed a waiver of rights, and continued to be interviewed for several more hours.
>
> Folsom moved to suppress evidence on the grounds that the first portion of the interview violated *Miranda* and that the entire interview was involuntary due to the intoxicating effects of the prescribed medications he took that day. The trial court ruled that all pre-*Miranda* statements and evidence derived therefrom were suppressed. The State appealed and Folsom filed a cross-appeal.

Id. at 11-12. In this prior opinion, we vacated the trial court's decision on the motion to suppress because the trial court had used the wrong standard of review. We also found that Folsom's cross-appeal was not ripe for consideration because the trial court had not yet made any ruling regarding the voluntariness of Folsom's statements. The case was, therefore, returned to the trial court. On remand, the trial court determined that: (1) statements from the first two hours of Folsom's interview were inadmissible and had to be suppressed because Folsom was being subjected to custodial interrogation without the benefit of his *Miranda* warnings; (2) the post-*Miranda* statements were not tainted by the previous questioning and were admissible; and (3) Folsom knowingly waived his *Miranda* rights, despite his claim that he was under the influence of medication at the time. The State now appeals the suppression of the first half of Folsom's interview, and Folsom cross-appeals, contending that the trial court erred by finding that his post-*Miranda* statements were admissible.

### Case No. S09A1423

1. The State contends that the trial court erred by suppressing statements made by Folsom during the period of his questioning that preceded the giving of his *Miranda* rights. Specifically, the State argues that the trial court erred by determining that Folsom was in custody at the time, thereby triggering *Miranda*. As we explained in the earlier case:

> A person is considered to be in custody and *Miranda* warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary. *Sewell v. State*, 283 Ga. 558, 560-561 (2) (662 SE2d 537) (2008). Thus, the relative

inquiry is how a reasonable person in Folsom's position would perceive his situation. *McAllister v. State*, 270 Ga. 224 (1) (507 SE2d 448) (1998).

(Punctuation omitted.) *Folsom*, supra, 285 Ga. at 12-13 (1).

"On appeal, the issue is whether the trial court was clearly erroneous in its factual findings regarding the admissibility of the [contested] statements. [Cit.]" *Jackson v. State*, 272 Ga. 191, 193 (3) (528 SE2d 232) (2000). In this case, the record supports the trial court's findings that: (1) Folsom was never told that he was free to leave; (2) Folsom was kept either under surveillance or in a closed interrogation room for the entire six hours; (3) Folsom was explicitly told that the evidence pointed towards him; and (4) Folsom was, in essence, required to come to the police station for questioning by officers who waited at his home and ensured that he arrived at the police station for questioning by following him. Under these circumstances, in which Folsom was sequestered for hours, asked incriminating questions repeatedly, and was never given any indication that he was free to leave or terminate the interview, it cannot be said that the trial court erred in its determinations that a reasonable person in Folsom's situation would believe that he was in custody and, concomitantly, that Folsom's pre-*Miranda* statements had to be suppressed. The trial court's determinations, therefore, were not erroneous.

## Case No. S09X1520

2. Folsom contends that the trial court erred by failing to suppress incriminating statements made by him following the administration of *Miranda* rights, arguing that this case is controlled by *State v. Pye*, 282 Ga. 796 (653 SE2d 450) (2007). In essence, Folsom argues that the State intentionally employed the type of two-stage "question first" technique forbidden in *Pye*, which, in turn, relied on *Missouri v. Seibert*, 542 U. S. 600 (124 SC 2601, 159 LE2d 643) (2004).

In *Pye*, supra, 282 Ga. at 799-800, we explained:

The Supreme Court's decision in *Seibert* deals with what the Court referred to as a "two stage" or "question first" interrogation procedure, supra at 609-611, in which police first question a suspect without administering *Miranda* warnings, gain a statement from the suspect, then administer *Miranda* warnings, and have the suspect repeat that which the suspect has already related, often with little interruption in time. The Court noted that in such circum-

stances, it is unlikely that the *Miranda* warnings will effectively advise a suspect of his rights. Id. at 611-614. The Court discussed its prior opinion in *Oregon v. Elstad,* 470 U. S. 298, 307 (105 SC 1285, 84 LE2d 222) (1985). *Elstad* allowed admission of a statement that followed *Miranda* warnings that had not been given the suspect until after a statement was made in violation of *Miranda,* provided that, under all the circumstances, the subsequent statement was determined to be knowingly and voluntarily made. The *Seibert* opinion distinguished *Elstad,* and essentially established an "effective warning" test, requiring an examination of circumstances to determine if the *Miranda* warnings given were effective; the opinion found that the warnings given to Seibert were ineffective to advise her of her rights, and thus her postwarning statements had to be suppressed. Id. at 617. Although the Court observed that the interrogation strategy employed in *Seibert* was deliberate, and even was admitted to be so by the police, the Court specifically noted that a police policy "will rarely be as candidly admitted as it was here," and declared that "the focus is on facts apart from intent that show the question-first tactic at work." Id. at 616, n. 6. As the Court found that the warning given could not effectively advise Seibert of her right to remain silent, her postwarning statements were inadmissible.

(Footnotes omitted.)

Contrary to Folsom's arguments, however, the present matter is wholly distinguishable from *Pye.* The pivotal facts of *Pye* show that

> Pye was questioned without being warned of his right to remain silent, he gave a statement implicating himself in the crimes, and then, without any break in the proceedings, was given *Miranda* warnings, asked some questions regarding his right to counsel, executed a waiver of his rights, and gave a statement that was essentially identical to the version of events he had already revealed to the detectives. In fact, just before executing the waiver form, Pye asked, "say for instance, if I don't talk right now, I'm a be going to jail?" This question shows that Pye was clearly aware that he had given the police incriminating information, and that he expected it to be used against him.

(Footnote omitted.) Id. at 801.

The facts of this case are quite different. Here, pre-*Miranda,*

Folsom was questioned about his ownership of a gun, and, although Folsom admitted that he had once owned such a gun and pawned it, he consistently maintained that he had no involvement in the murders. Post-*Miranda*, the questioning related specifically to Folsom's connection to the crime that had been committed, and Folsom admitted his direct connection with the crimes. Therefore, the record supports the trial court's determination that Folsom had not been subjected to an inappropriate two-stage questioning technique which destroyed the purpose of *Miranda*. Here, Folsom was not enticed to admit to the crime, given *Miranda* rights, and asked to repeat the pre-*Miranda* admission. At the time that *Miranda* rights were given in *Seibert* and *Pye*, in contrast, "there was little, if anything, of incriminating potential left unsaid." *Seibert*, supra, 542 U. S. at 616 (V). That is not the case here.

3. Folsom contends that his post-*Miranda* confession must be suppressed because it was improperly induced by the hope of benefit. As an initial matter, it does not appear that Folsom raised this contention in the proceedings below. As a result, he has waived the right to argue this issue for the first time on appeal. See, e.g., *Young v. State*, 282 Ga. 735 (653 SE2d 725) (2007). Moreover, even if Folsom had preserved this contention, it would be misplaced.

> Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial, and the State has the burden of proving the voluntariness of a confession by a preponderance of the evidence. *State v. Ritter*, 268 Ga. 108 (1) (485 SE2d 492) (1997). OCGA § 24-3-50 requires that an admissible confession "must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." "The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect." *White v. State*, 266 Ga. 134 (3) (465 SE2d 277) (1996). Generally, the "hope of benefit" to which the statute refers has been construed as a hope of lighter punishment.

*Foster v. State*, 283 Ga. 484, 485 (2) (660 SE2d 521) (2008).

During pre-*Miranda* interrogation, the questioning officer told Folsom that he needed to decide whether he wanted to "be on the side of witness" or "be on the side of being prosecuted." Folsom argues that a person in Folsom's position would have reasonably viewed this statement as meaning that he would only be able to avoid prosecution if he told the police officers exactly what they wanted to hear. We have previously decided this issue adversely to Folsom's

contention. In *Foster*, supra, 283 Ga. at 487 (2), the defendant similarly contended that

> the interrogators' statements in the second interview that appellant could be a witness or a defendant were implied promises of lighter punishment, including the possibility of escaping punishment altogether. See *State v. Ritter*, supra, 268 Ga. 108 (1). However, in *Duke v. State*, 268 Ga. 425 (2) (489 SE2d 811) (1997), where interrogating officers described the defendant's situation as one in which he could be a witness or a defendant, this Court affirmed the trial court's denial of the motion to suppress, concluding that the officers "clearly did not imply that [the defendant] would not be charged if he was himself involved in the murder[,]" but were only encouraging him to tell the truth. Exhortations to tell the truth are not a hope of benefit that renders a confession inadmissible under OCGA § 24-3-50. Id.

Moreover, the record in this case shows that the interrogating officer repeatedly told Folsom that he could not offer him any deals for lighter punishment. For example, the officer told Folsom: (1) "[I]f I was to say that we'll recommend you get this sentence versus this sentence, I would be breaking the law . . . ; (2) "Now I can't . . . make you a deal or anything like that . . ."; and (3) "And like I say I can't make any deals with you. I just can't, but the . . . District Attorney can." Under the totality of the circumstances, it is clear that the questioning officer explicitly informed Folsom that he could not give him any deal in exchange for truthful information. Therefore, the statement in this case was not induced by the hope of benefit. Id.

4. Finally, Folsom contends that all of his statements, pre- and post-*Miranda*, should have been suppressed because he was under the influence of prescription medications to an extent that his statements were rendered involuntary. Determinations of fact and credibility made by a trial court following a voluntariness hearing must be affirmed unless they are clearly erroneous. *Screws v. State*, 245 Ga. App. 664 (1) (538 SE2d 547) (2000). In this case, the trial court fully reviewed all of the evidence, including the videotape of Folsom's interrogation, and determined that Folsom was lucid and comprehended the questions asked of him, in spite of any medications he may have taken. "Because the trial court's findings as to the voluntariness of the statement are supported by the evidence, we find no error in its admission at trial. See *Shelby v. State*, 265 Ga. 118 (2) (453 SE2d 21) (1995)." *Carter v. State*, 285 Ga. 394, 398 (5) (677 SE2d 71) (2009).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 2, 2009.

*Donald N. Wilson, District Attorney, Bryan R. Howard, Assistant District Attorney, Thurbert E. Baker, Attorney General*, for appellant.
*Oliver J. Browning, Jr.*, for appellee.