## S13A0153. FENNELL v. THE STATE.
### (741 SE2d 877)

THOMPSON, Presiding Justice.

Appellant Marcus Fennell was convicted of two counts of malice murder, armed robbery, and possession of a firearm during the commission of a felony in connection with the shooting deaths of Andrew Coleman and Martial Washington.[1] He appeals on various grounds from the denial of his motion for new trial, and for the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the jury was authorized to find that on the night of the crimes appellant and several other individuals agreed to set up a drug purchase from Coleman and then rob him. The men decided that after the robbery they would have to kill Coleman to eliminate the possibility of retaliation. Appellant, who was the only one with Coleman's contact information, called Coleman to set up the purchase. Later that evening, as appellant purchased drugs from the window of Coleman's vehicle, the other individuals shot Coleman and his passenger, Martial Washington, multiple times. Appellant then took back the money he had given to Coleman, the other men took money and drugs from Coleman's possession, and they ran away.

Police found Coleman's cellular telephone in his vehicle and from it learned that the last call was made to appellant's telephone number. Detectives called appellant, who agreed to meet them at his home. Once there, detectives told appellant he was not under arrest and asked if he would come to police headquarters for questioning. A detective told appellant that his father, who was present, could drive him to the station, but appellant asked if he could ride with the detectives instead. He rode to police headquarters in the front seat of a police vehicle. He was neither patted down nor handcuffed.

At police headquarters, appellant was placed in an unlocked interview room where detectives reminded appellant he was not

---

[1] The crimes were committed on August 30, 2006. Appellant was indicted by a Chatham County grand jury on November 21, 2006, and charged with two counts of malice murder, two counts of felony murder, armed robbery, and three counts of possession of a firearm during the commission of a crime. Trial commenced on August 23, 2010, and the jury returned its verdict on August 27, 2010, finding appellant guilty on all counts. The trial court sentenced appellant on September 17, 2010 to two consecutive life sentences for malice murder, twenty consecutive years imprisonment for armed robbery, and five consecutive years imprisonment for possession of a firearm during the commission of a crime. The remaining counts of the indictment were vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). Appellant timely filed his motion for a new trial on October 15, 2010, and amended the motion on February 1, 2011 and December 9, 2011. The motion for new trial was denied on March 19, 2012, and appellant filed a notice of appeal on March 23, 2012. The appeal was docketed to the January 2013 term of this Court and submitted for decision on the briefs.

under arrest and told him they appreciated his coming in to talk with them. During initial questioning, which lasted approximately one hour, appellant answered his cellular telephone several times, he was not handcuffed or restrained, and he was given a beverage. Appellant at first denied having knowledge of the shooting, but he eventually admitted he had seen the shooting from a distance and later acknowledged he was in closer proximity to the shooting than he originally stated. At this point, detectives stopped the interview, obtained a *Miranda* waiver form, and returned to advise appellant of his rights. Appellant stated he understood his rights, signed the waiver form, and after further questioning, gave another statement in which he admitted setting up the drug purchase and that he knew the others intended to rob and shoot Coleman.

We conclude the evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant argues the trial court erred by denying his motion to suppress his pre-*Miranda* statements to police. Specifically, he contends the trial court erred in finding that he was not in custody at the time the statements were made. We disagree. On appeal, " 'we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts.' " *Vergara v. State*, 283 Ga. 175, 177 (657 SE2d 863) (2008) (citation omitted). "The trial court determines the admissibility of a defendant's statements under the preponderance of the evidence standard considering the totality of the circumstances." Id. at 176.

The record in this case supports the trial court's factual findings that appellant voluntarily went to the police station for his interview; he chose to ride with police from his home rather than with his father; he was specifically informed he was not under arrest at that time; and he was not handcuffed or frisked before getting into the police vehicle. In addition, during the interview, appellant was in an unlocked room where he was allowed to answer his cellular telephone, was given a drink and offered food, and was never restrained. Although one detective told appellant that they knew he was not being completely truthful, the detective was neither hostile nor accusatory toward appellant such that a reasonable person would have thought he was not free to leave. Because under the totality of the circumstances a reasonable person in appellant's position would not have felt restrained to a degree associated with a formal arrest, we agree with the trial court that appellant was not in custody when he made his pre-

*Miranda* statements. See *Petty v. State,* 283 Ga. 268, 269 (658 SE2d 599) (2008). Compare *Sosniak v. State,* 287 Ga. 279, 281-282 (695 SE2d 604) (2010) (defendant not in custody for *Miranda* purposes where he was handcuffed pursuant to police policy and transported for questioning, placed in unlocked interview room, and told he was not under arrest but police needed to talk to him); *Bell v. State,* 280 Ga. 562 (2) (629 SE2d 213) (2006) (defendant not in custody for purposes of *Miranda* where he was handcuffed pursuant to police protocol during the execution of search warrant, was driven in a patrol car to police barracks where he was released from handcuffs, was free to move about so long as he remained in an officer's presence, and was advised that he was free to leave at any time).

3. Appellant also contends the trial court erred by denying his motion to suppress his post-*Miranda* statements because the State employed the "question first" technique prohibited by *Missouri v. Seibert,* 542 U. S. 600 (124 SCt 2601, 159 LE2d 643) (2004) and *State v. Pye,* 282 Ga. 796 (653 SE2d 450) (2007). In *Pye,* we described the two-stage or question-first technique as an "interrogation procedure in which police first question a suspect without administering *Miranda* warnings, gain a statement from the suspect, then administer *Miranda* warnings, and have the suspect repeat that which the suspect has already related, often with little interruption in time." (Citation omitted.) *Pye,* 282 Ga. at 799. Under such circumstances, post-warning statements must be suppressed because it is unlikely that the *Miranda* warnings will effectively advise a suspect of his rights. *Seibert,* supra, 542 U. S. at 617; *Pye,* supra, 282 Ga. at 799-800.

The holdings of *Seibert* and *Pye* are not controlling in this case, however, because detectives did not use the prohibited question-first method of interrogation. The focus of appellant's initial interview with police was on the victims, the conversations police believed appellant may have had with Coleman shortly before he was shot, and the reasons why the victims might have been in the park where the crimes occurred. Appellant at that time consistently denied any involvement in the crimes and maintained he did not speak with Coleman the night of the crimes. Even after appellant told police he saw Coleman's car in the park that night and saw two men shoot into the vehicle, the focus of questioning was on what appellant saw. After *Miranda* warnings were given, detectives went well beyond the scope of the initial interview, eventually obtaining statements from appellant in which he admitted his direct involvement in the crimes. Thus, the post-*Miranda* interrogation differed not only in the completeness and detail of the questions asked by the detectives but also in the content of appellant's statements. The record, therefore, supports the trial court's determination that appellant "had not been subjected to

an inappropriate two-stage questioning technique which destroyed the purpose of *Miranda*." *State v. Folsom*, 286 Ga. 105, 110 (2) (686 SE2d 239) (2009).

4. Nor do we find any error in the trial court's determination that appellant's statements were knowingly and voluntarily made. Although appellant stated at one point during the interview that he was tired, he did not indicate that he wanted to stop the interrogation or that he was not thinking clearly. Absent any evidence " 'of the extreme tactics identified as the hallmarks of coercive police activity' . . . such as lengthy interrogation, physical deprivation, brutality, or deception," the trial court's decision regarding the voluntariness of appellant's statements was not erroneous. *Gober v. State*, 264 Ga. 226, 228 (443 SE2d 616) (1994). See *Milinavicius v. State*, 290 Ga. 374 (2) (721 SE2d 843) (2012).

5. Finally, appellant argues that trial counsel provided ineffective assistance by failing to articulate a race-neutral reason for striking a juror once the State opposed the defense's strikes under *Georgia v. McCollum*, 505 U. S. 42 (112 SCt 2348, 120 LE2d 33) (1992).

> In order to succeed on [an ineffective assistance of counsel] claim, appellant must show that his counsel's performance was professionally deficient and that, but for counsel's unprofessional conduct, there is a reasonable probability the outcome of the proceedings would have been different.

*Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

The record reveals that defense counsel used all of her peremptory strikes to remove white jurors from the jury panel. In explaining her reasons for striking a particular prospective juror, juror number eight, counsel stated she struck him because he gave appellant a "look." The trial court found defense counsel's reason was pretextual and the strike was disallowed. Appellant does not enumerate as error the trial court's determination that the reason offered by defense counsel for striking juror number eight was pretextual; nor does he argue that the trial court erred by seating the juror. Instead, appellant argues counsel was deficient for failing to articulate a race-neutral reason for striking the juror that the trial court would not have found to be pretextual. He has failed, however, to state what that race-neutral reason should have been, or even assuming the existence of such a proper, race-neutral explanation, to demonstrate that the outcome of the trial would have been different if the juror had not been seated. As found by the trial court, "the mere fact that a given

explanation was unsatisfactory does not mean counsel was ineffective. There may not have been a better explanation." Accordingly, appellant failed to meet his burden under either prong of *Strickland,* and the trial court did not err by denying his motion for new trial on this ground.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 29, 2013.

*Amy L. Ihrig, Falen O. Cox,* for appellant.

*Larry Chisolm, District Attorney, Ann M. Elmore, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General,* for appellee.

