In the Supreme Court of Georgia

Decided: November 3, 2014

S14A1689.  BROWNER v. THE STATE.

BENHAM, Justice.

Appellant Antonio Browner was convicted of felony murder and other related crimes associated with the shooting death of Gary Cole, the assistant manager of a Family Dollar store, during an armed robbery of the store.  He was also convicted of armed robbery of Fran Meyer and attempted car-jacking of her vehicle which occurred later in the same evening as the shooting of Mr. Cole.[1]

---

[1]  The crimes occurred April 12, 2011.  On June 21, 2011, appellant and two others were jointly indicted by a Bibb County grand jury on identical charges of malice murder with respect the death of victim Gary Cole, felony murder (aggravated assault with a deadly weapon), armed robbery with respect to the theft of property of the Family Dollar store, aggravated assault of Gary Cole, aggravated assault of Cynthia Poole, armed robbery with respect to the theft of property of Fran Meyer,  criminal attempt to hijack a motor vehicle, and two counts of possession of a firearm during the commission of a felony.  Appellant was tried before a jury from November 7-10, 2011, and was found guilty on all charges except malice murder.  The aggravated assault conviction merged with the conviction for felony murder for sentencing purposes, and appellant was sentenced as follows: life without parole for the felony murder conviction;  life for the armed robbery conviction relating to the theft of property of the Family Dollar store to run concurrently with the sentence for the felony murder conviction; twenty years for the aggravated assault of Cynthia Poole to run concurrently with the life sentences;  life for the armed robbery of Fran Meyer to run consecutively with the previous sentences; ten years for criminal attempt to hijack a motor vehicle to run concurrently with the previous sentences; and five years for each of the two convictions for possession of a firearm during the commission of a crime to run consecutively with each other and consecutively to the previous sentences.  Appellant filed a timely motion for new trial which was twice amended.  After a hearing, the trial court denied the motion for new trial and appellant filed a timely notice of appeal on April 28, 2014.  The appeal was docketed to the September 2014 term of this Court for a decision to be

Browner appeals, raising several grounds, and for the reasons set forth herein, we affirm.

Viewed in the light most favorable to the verdict, the trial evidence showed that appellant entered the store armed with a gun with the intent to commit robbery. He commanded the store manager to open the safe but while the manager was attempting to do so, Browner shot him. The victim died as a result of the shooting. After shooting the manager, appellant turned his gun on another employee, Cynthia Poole, before running out of the store. Although neither employee opened the store safe or registers, appellant testified and admitted he took cash that was laying on the store counter. The robbery was recorded by store security cameras which showed appellant wearing distinctive cartoon-printed pajama-style pants. Video from a security camera at the courthouse showed a man matching appellant's description wearing the same pajama-style pants earlier the same day. Appellant admitted he was the man shown in both security camera videos. The store camera also showed one of appellant's co-indictees, Quartez Carter, standing at the door to the store. The other co-indictee, Ron'Esha Smith, waited outside in a get-away car. During the

made on the briefs.

2

robbery, the cell phone appellant was carrying made an apparently inadvertent call to a friend who heard appellant tell the store manager to "shut the f*** up and give it to me. Open the drawer." The witness also heard another male voice in the background saying, "Just beat his a**." She also heard a gunshot. The next day, appellant admitted to the friend who received the telephone call that he and the others had robbed the store, but he denied killing anyone. When the friend learned from an internet report that an employee had been killed in the robbery, she notified law enforcement authorities and told them appellant and Smith were on their way to her home, where they intended to hide out for a few days.

Acting on this tip, the police located Smith's car en route to the friend's house and made a traffic stop. Appellant was taken into custody, after which he gave two statements to police. A search of the stopped car revealed evidence related to the armed robbery and attempted car-jacking of victim Fran Meyer. That victim identified co-indictee Smith's car as one she had seen nearby before she was accosted. She testified that the purse taken from her contained several hundred-dollar bills. Security cameras at a nearby store, as well as store records of the transaction, captured video showing appellant making a purchase using

a one-hundred-dollar bill shortly after the robbery of Meyer and the attempted car-jacking. When Smith's car was searched after Smith and appellant were taken into custody, the victim's checkbook was found in Smith's vehicle. Two of appellant's younger relatives testified that appellant and his two co-indictees had picked them up on the evening of these events and they had witnessed the Meyer armed robbery and attempted car-jacking. Pajama-style pants matching those that appellant admitted he was wearing at the scene of the store robbery and shooting were recovered from a dumpster at Carter's apartment complex.

At trial, appellant testified he had committed the store armed robbery, had fired the shot that killed the store manager, and took Meyer's purse, but appellant claimed Carter had threatened to kill him and Smith if he did not comply. The witnesses to the attempted car-jacking, however, testified they never saw Carter threaten appellant as they were driving around. In two custodial statements given to the police, appellant did not mention that Carter had threatened or coerced him.

1. Appellant asserts the trial court erred in denying his motion for new trial on the ground that the evidence was insufficient to convict. Quoting *Jackson v. Virginia*, 443 U.S. 307, 317 (99 SCt 2781, 61 LE2d 560) (1979),

4

appellant urges that the United States Supreme Court recognized that even "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt," and that this is such a case. Particularly with respect to what appellant refers to as "the secondary charges," presumably referring to the charges relating to the car-jacking and armed robbery of Ms. Meyer, appellant claims the evidence was vague, ambiguous, and conflicting, at best, with regard to him.

When reviewing the sufficiency of the evidence this Court does not reweigh the evidence or resolve conflicts in testimony. *Caldwell v. State*, 263 Ga. 560, 562 (1) (436 SE2d 488) (1993). Resolving evidentiary conflicts and inconsistencies and assessing witness credibility are the province of the fact finder, not the appellate court. *Miller v. State*, ___ Ga. ____ (1) (___ SE2d ___), 2014 WL 4958168 (Oct. 6, 2014). Appellant presented the affirmative defense of coercion, but the jury was not required to believe him or accept that defense. See, e.g., *Murray v. State*, 295 Ga. 289, 291 (1) (759 SE2d 525) (2014) (jury entitled to disbelieve affirmative defense of self-defense); *Engrisch v. State*, 293 Ga. App. 810, 812 (688 SE2d 319) (2008). Although appellant denied he participated in the attempted car-jacking at the time he took Meyer's

purse, the evidence was at least sufficient to support his conviction as a party to the crime. In determining the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the verdict. *Miller v. State,* supra at (1). Doing so, we find sufficient evidence was presented at trial to permit a rational trier of fact to find appellant guilty of all the charges for which he was convicted.

2. After being taken into custody, appellant gave two separate statements to police. The trial court conducted a hearing on appellant's motion to suppress the statements from being presented as evidence at the trial, after which the court denied appellant's motion. The evidence presented at the hearing showed that before giving each statement, appellant executed a written waiver acknowledging that he had been informed of his right to have counsel present during any statement made to police, indicating that he understood his rights, and declaring that he freely and voluntarily waived his right to have counsel present. Nevertheless, appellant asserts the trial court erred in admitting the statements because, he claims, the totality of the circumstances show that his statements were not freely and voluntarily made. "[U]nless clearly erroneous, a trial court's credibility determinations and factual findings relating to the

admissibility of a confession must be upheld on appeal. However, we independently apply the law to the facts." (Citation omitted.) *Smith v. State*, 295 Ga. 283, 285 (1) (759 SE2d 520) (2014). Applying this standard, we find no error in the trial court's decision to admit the two custodial statements into evidence.

Appellant's assertion that the statements should not have been admitted into evidence is based in part on the fact that appellant was kept waiting in isolation from others for over an hour before the interviewing officer first informed him of his rights and took his first statement, during which time he was under video surveillance. No evidence gleaned from the pre-interview videotape, however, was admitted into evidence. Thus, the fact that a videotape was made, unbeknownst to appellant, before he was advised of his right to counsel and right to remain silent is irrelevant to the issue of whether the statements admitted into evidence were freely and voluntarily given. Without referencing any evidence in support, appellant claims that the period of isolation imposed on him prior to the first statement he gave had an adverse psychological effect upon him, noting that he was only nineteen years of age at the time of the questioning. Physical or mental torture is the type of fear of

7

injury that prevents a confession from being admissible pursuant to the former OCGA § 24-3-50.[2]  See *State v. Roberts*, 273 Ga. 514 (4) (543 SE2d 725) (2001), overruled on other grounds, *Vergara v. State*, 283 Ga. 175 (657 SE2d 863) (2008).  The record, however, shows appellant was not a minor and was a high school graduate who was enrolled in his second year of technical school at the time of these events.  Thus, we reject the suggestion that he was of such tender years that being held in the interview room by himself prior to commencement of the questioning, without more, constituted physical or mental torture of the type to render an in-custody statement involuntary and inadmissible.  See id.

Appellant further argues that his statements were made when he was tired and under duress, and therefore his statements were not freely given.  Appellant, however, fails to point to any circumstances supporting the assertion that his statements were made under duress, and a review of the videotape of his statements reveals no such duress was applied.  At no point during the interviews did appellant assert his right to counsel or attempt to end the interview.  The videotape of the two interviews reveals no evidence of extreme

---

[2] OCGA § 24-3-50 is now codified at OCGA § 24-8-824 as part of the new Evidence Code.

8

tactics "such as lengthy interrogation, physical deprivation, brutality, or deception" that would render the trial court's decision regarding the voluntariness of appellant's statements erroneous. (Citation and punctuation omitted.) *Fennell v. State*, 292 Ga. 834, 837 (4) (741 SE2d 877) (2013).

Also, appellant claims the fact that he was offered water and a cigarette after the first interview began, but not during the time he spent waiting for the interview to begin, demonstrates an improper benefit was offered that renders his statement involuntary and inadmissible. Appellant points to no evidence that he asked for, but was denied, water or any other comfort accommodations while he was waiting for the interview to begin. Providing them during the in-custody interview does not rise to the level of a hope of benefit that will prevent a confession from being admissible pursuant to OCGA § 24-3-50. "Generally, the 'hope of benefit' to which the statute refers has been construed as a hope of lighter punishment." *Wilson v. State*, 285 Ga. 224, 227 (3) (675 SE2d 11) (2009); see also *White v. State*, 266 Ga. 134, 135 (3) (465 SE2d 277) (1996) ("The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect.")

3. Appellant asserts the trial court erred in admitting into evidence, over

his objection, four photographs of victim Cole's body. Appellant asserts the photographs were gruesome, have no independent probative value, and therefore they served only to prejudice the jury by interjecting emotion into the case. Further, he asserts the inflammatory effect of these photographs outweighs their evidentiary worth where, as here, appellant did not contest the victim was shot and died from his wounds. The first of these photographs showed the victim lying in a body bag, covered by a sheet up to his shoulders with a breathing apparatus on his face. At the hearing on the motion to suppress, in response to appellant's objection, the prosecutor countered that this photograph was relevant in that it showed how the victim arrived at the medical examiner's office and also showed the medical examiner's case number, by which the examiner was able to identify the victim as she testified at trial. The second photograph showed a close-up of the victim's face once the breathing apparatus was removed, which showed some blood in the victim's mouth, but the prosecutor countered that this was the only photograph showing an unobstructed view of the victim's face which was not a nude full-body photo. The third photograph showed the gunshot entry wound in the victim's side and the fourth was a close-up of the entry wound. As such, these photographs were relevant to

10

demonstrating the cause of death and type of wound inflicted in the shooting.

Generally, pre-incision autopsy photographs of the victim are admissible if relevant and material to any issue, even if they are duplicative and may inflame the jury. See *Thomas v. State*, 259 Ga. 202, 203 (4) (378 SE2d 686) (1989). This Court has deemed pre-autopsy photographs to be relevant and material, and therefore admissible, if they illustrate the nature and extent of the victim's wounds. See *Oliver v. State*, 276 Ga. 665, 668 (5) (581 SE2d 538) (2003); *Hayes v. State*, 268 Ga. 809, 812 (5) (493 SE2d 169) (1997). That one of the photographs depicted the victim with a breathing apparatus on his face does not make it inadmissible. Compare *Johnson v. State*, 289 Ga. 106, 108 (2) (709 SE2d 768) (2011) (the mere fact that metal probes illustrating the angle and path of the victim's wounds could be seen in photographs of the victim did not render them inadmissible); *Stewart v. State*, 286 Ga. 669, 670 (3) (690 SE2d 811) (2010) (photographs that included medical devices with the victim's body were not unnecessarily gruesome to admit into evidence). Further, the fact that the cause of death was not in dispute does not render the photographs unnecessary and therefore inadmissible. See *Johnson v. State*, supra. "The admission of photographic evidence is at the discretion of the trial court."

11

*Stewart v. State*, supra, at 107. In this case, we find no abuse of the trial court's discretion in admitting the disputed photographs into evidence.

4. Appellant testified and admitted that he held a gun on the victim but that he only meant to scare the victim into opening the safe and did not mean the gun to go off. He urges that this testimony established an evidentiary issue for jury determination regarding intent, and that since the credibility of his testimony was up to the jury to determine, the trial court erred in failing to give his requested charge on the affirmative defense of accident or misfortune. But appellant's own testimony negates any issue regarding accident or misfortune.

Pursuant to OCGA § 16-2-2: "A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." Even if an issue was presented for jury determination regarding whether appellant had been coerced into engaging in the criminal scheme and undertaking of armed robbery, the evidence did not support the requested jury charge. Criminal negligence means "reckless and wanton negligence of such a character as to show an utter disregard for the safety of others who might reasonably be expected to be injured thereby." (Citation omitted.) *New v. State*,

12

260 Ga. 441(1) (396 SE2d 486) (1990) (a jury instruction on accident was not appropriate in a case in which the defendant testified he cocked and aimed a gun at the victim, because such conduct constitutes criminal negligence). Appellant admitted he pulled back the hammer of the gun and pointed the gun at the victim to scare him. Thus, appellant's testimony established he was engaged in conduct that constitutes criminal negligence. No evidence was presented at trial to support an instruction on accident and misfortune, and, in fact, appellant's own testimony negates such a theory of the case. Consequently, the trial court did not err in failing to give the requested charge.

Judgment affirmed. All the Justices concur.

13