300 Ga. 616
FINAL COPY

S16A1858. THE STATE v. TROUTMAN.

HUNSTEIN, Justice.

In this pre-trial appeal filed pursuant to OCGA § 5-7-1 (a) (4), the State challenges the trial court's order suppressing the inculpatory statement of Appellee Andrew Troutman. We affirm in part and reverse in part.

During the course of investigating the murder of Earl Clemons, investigators learned through a witness and cellular telephone records that Troutman may have met with Clemons on the day of the murder. Investigators picked up Troutman from his home on a Thursday morning in January 2014 and, over the course of nine hours, interviewed him three times; at the end of the third interview, Troutman admitted killing Clemons. Following his indictment for murder and related offenses, Troutman moved to suppress his incriminating statement. After conducting a hearing — at which the trial court received as evidence testimony from various witnesses, including Troutman, and the recorded and transcribed interview — the trial court concluded that the statement was inadmissible because it was a custodial statement elicited without

the benefit of the Miranda[1] warnings and, further, that the statement was involuntary. We now address each ruling in turn, keeping in mind that, in reviewing these mixed questions of fact and law, "'we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts.'" (Citations omitted.) Vergara v. State, 283 Ga. 175, 177 (657 SE2d 863) (2008). Likewise, we will construe the evidence most favorably to uphold the findings and judgment of the trial court. Teele v. State, 319 Ga. App. 448 (2) (738 SE2d 277) (2012).

1. The trial court determined that Troutman was in custody prior to the beginning of the third interview and that, because investigators never advised Troutman of his Miranda rights, Troutman's subsequent inculpatory statement was inadmissible. On appeal, the State contends that Miranda warnings were unnecessary because Troutman was not in custody. We disagree.

Miranda warnings must be administered to an accused who is in custody and subject to interrogation or its functional equivalent. Phillips v. State, 285 Ga. 213 (2) (675 SE2d 1) (2009). "A person is considered to be in custody and

---

[1] Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

Miranda warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would perceive that he was in custody, Miranda warnings are not necessary." (Citations and punctuation omitted.) Sewell v. State, 283 Ga. 558, 560-561 (2) (662 SE2d 537) (2008). Thus, the proper inquiry is how a reasonable person in Troutman's shoes would have perceived his situation. State v. Folsom, 286 Ga. 105 (1) (686 SE2d 239) (2009).

In this case, the record supports the trial court's findings that: (1) Troutman was kept at the police station over the course of nearly nine hours in a non-public area, during which he was interviewed three times; (2) he was never advised of his Miranda rights; (3) investigators never advised Troutman that he was free to leave; and (4) Troutman was explicitly told that he was not allowed to leave. Under these circumstances, in which Troutman was sequestered for hours, repeatedly interviewed, and never given any indication that he was free to leave or terminate the interview (and advised that he could not go), we cannot say that the trial court erred in its determination that a reasonable person in Troutman's position would have believed that he was in custody before the start of the third interview and, thus, that Troutman's

unwarned statement given during that third interview was due to be suppressed. See Folsom, 286 Ga. at 108 (affirming trial court's suppression of unwarned statement where defendant was sequestered for hours, repeatedly asked incriminating statements, and never advised that he could leave).

2. "We next address the issue of whether the in-custody statement admitted in violation of Miranda was, nevertheless, voluntary under traditional due process standards." Metheny v. State, 197 Ga. App. 882, 885 (400 SE2d 25) (1990). The trial court concluded that Troutman's statement to investigators was involuntary and, thus, could not be used at trial for any purpose. Underpinning its conclusion were the following findings of fact:

> Defendant was interrogated for 2 hours and 45 minutes, held at the police station for nearly 9 hours, was held incommunicado throughout, had his phone and shoes removed by police, was kept in isolation in a non-public area of the police headquarters, and, on two occasions, was told that he was not free to leave on his own. Moreover, he was 21 years old and still in high school, was dyslexic and told detectives he had not slept in three days.

On appeal, the State contends that these facts are insufficient to conclude that Troutman's statement was involuntary. We agree.

"[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of

4

the Fourteenth Amendment." Colorado v. Connelly, 479 U. S. 157, 167 (107 SCt 515, 93 LE2d 473) (1986). However, the investigators' mere failure "to administer Miranda warnings does not mean that the statements received have actually been coerced, but only that courts will presume the privilege against compulsory self-incrimination has not been intelligently exercised." (Citation omitted.) Oregon v. Elstad, 470 U. S. 298, 310 (II) (B) (105 SCt 1285, 84 LE2d 222) (1985). Thus, because "the Miranda presumption does not necessarily constitute a finding that the statement was coerced," Metheny, 197 Ga. App. at 886, "[s]tatements obtained in violation of the procedural requirements of Miranda may be found otherwise voluntary under due process standards." (Citations omitted.) Id. at 885.

Even accepting the trial court's findings of fact, "the circumstances of the investigation and arrest in the case reveal none of the extreme tactics identified as the hallmarks of coercive police activity offensive to fundamental notions of due process," Metheny, 197 Ga. App. at 886, "such as lengthy interrogation, physical deprivation, brutality, or deception." Gober v. State, 264 Ga. 226, 228 (443 SE2d 616) (1994). The findings of the trial court regarding the conduct of

investigators — isolating Troutman, taking his shoes and phone,[2] holding him incommunicado, and advising him that he could not leave — are hallmarks that Troutman was in *custody* and that his freedom was restrained, see, e.g., Folsom, supra, but they do not rise to "'techniques and methods offensive to due process' [cits.] or [create] circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will.'" (Citations omitted.) Elstad, 470 U. S. at 304.[3] While Troutman was kept at police headquarters for approximately nine hours, the trial court recognized that only a fraction of that time was spent in interrogation. Compare Darwin v. Connecticut, 391 U. S. 346 (88 SCt 1488, 20 LE2d 630) (1968) (statement involuntary where suspect interrogated for 48 hours and held incommunicado while being denied access to counsel). Likewise, though Troutman's mental state and intellectual disabilities are factors to be considered, see Colton v. State, 296 Ga. 172 (1) (766 SE2d 38) (2014),

---

[2] It appears that Troutman's shoes and cellular telephone were viewed as items of evidentiary value to investigators. As referenced above, it was cell phone records, at least in part, that led investigators to Troutman, and it appears that investigators were examining Troutman's shoes for trace evidence of the stabbing.

[3] We do not mean to be understood that facts tending to establish custody for the purposes of Miranda will never be relevant to the question of the voluntariness of a confession — indeed, often they will be — but the facts here strongly relate to Troutman's freedom of movement rather than his exercise of his free will.

those factors, without more — i.e., "deliberate tactics calculated to break the will of the suspect," Metheny, 197 Ga. App. at 886 — are insufficient to support a conclusion of coercive police activity. Cf. Browner v. State, 296 Ga. 138, 142 (2) (765 SE2d 348) (2014) ("[W]e reject the suggestion that he was of such tender years [at the age of 19] that being held in the interview room by himself prior to commencement of the questioning, without more, constituted physical or mental torture of the type to render an in-custody statement involuntary and inadmissible."). See also Elstad, 470 U. S. at 312-313, n. 3 (collecting cases where confessions deemed involuntary). Accordingly, the trial court's findings of fact regarding the conduct of investigators in this case are insufficient to support the legal conclusion that Troutman's statement was a result of coercive police activity and, thus, involuntary. See State v. Davison, 280 Ga. 84, 86 (1) (623 SE2d 500) (2005) ("Accordingly, the trial court erred in its legal conclusion that, under the undisputed evidence, Appellee's statements were the result of coercive government activity.").

Judgment affirmed in part and reversed in part. All the Justices concur.

Decided February 27, 2017.

Custodial statement. DeKalb Superior Court. Before Judge Seeliger.

Sherry Boston, District Attorney, Lenny I. Krick, Assistant District Attorney, for appellant.

Timothy L. Cook, for appellee.