# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket Nos. 43844 & 43845

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) |
| Plaintiff-Respondent, | ) Boise, April 2017 Term |
| | ) |
| v. | ) 2017 Opinion No. 73 |
| | ) |
| SHAWN WILLIAM WASS, | ) Filed: June 22, 2017 |
| | ) |
| Defendant-Appellant. | ) Karel A. Lehrman, Clerk |
| _____ | ) |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Christopher S. Nye, District Judge.

The judgment of conviction is <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, attorney for appellant. Andrea Reynolds argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent. John C. McKinney argued.

_____

JONES, Justice

## I. NATURE OF THE CASE

Shawn William Wass ("Wass") appeals from the judgment entered upon his conditional guilty plea to possession of a controlled substance (methamphetamine). He asserts on appeal that the district court erred when it denied his motion to suppress his admission to the arresting officer that he was in possession of syringes.

## II. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 12:37 A.M. on August 9, 2015, Officer Dan Drake ("Officer Drake") of the Canyon County Sheriff's Office was patrolling the Sportsman's access on 21319 Midland Boulevard. He observed a purple Hyundai Elantra in the parking area, which is closed during the

1

night. Officer Drake approached the vehicle. Grace Stanbery ("Stanbery") was sitting in the passenger seat. Wass was standing behind the vehicle. Officer Drake spoke briefly to Wass, who admitted that he and Stanbery had been drinking two hours prior. Officer Drake asked both parties for identification. Stanbery provided an Idaho driver's license. Wass gave Officer Drake his name, but claimed that he did not have any identification on him. Officer Drake asked Wass if there was anything illegal in the vehicle. Wass answered that there was not. Officer Drake asked Wass and Stanbery for permission to search the vehicle. Both refused. Officer Drake then returned to his vehicle to enter the identifying information he had been given into his mobile computer. The mobile computer alerted Officer Drake that Wass had two active outstanding warrants. Officer Drake reapproached the vehicle and administered a field sobriety test on Wass. During the field sobriety test, Wass placed his wallet on the hood of the vehicle. Wass then admitted that he had identification in his wallet and that he had lied to Officer Drake because he was concerned that there might be an outstanding warrant. Officer Drake informed Wass that there were actually two outstanding warrants and placed him in wrist restraints. Officer Drake again asked Wass if there was anything illegal in Wass' vehicle. This time Wass admitted that there were syringes in the vehicle. At the time of this admission, Wass had not been informed of his *Miranda* rights. Officer Drake later testified that he immediately realized at that time that he had made "a mistake."

After Wass told him that there were syringes in the vehicle, Officer Drake placed Wass in his police vehicle. Officer Drake approached Wass' vehicle but did not enter it. He visually inspected the vehicle but was unable to see anything illegal. After approximately two minutes, Officer Drake returned to his police vehicle. Officer Drake informed Wass of his *Miranda* rights. Wass affirmed that he understood his rights. Officer Drake then asked Wass if, with those rights in mind, Wass still wanted to tell him about anything illegal in Wass' vehicle. Wass again stated that there were syringes in the vehicle. Officer Drake searched Wass' vehicle where he recovered a black spoon with white residue, three syringes, a cotton arm sleeve, two small pieces of cotton, and an aluminum foil bindle containing marijuana. One of the syringes was loaded with a white clear liquid. The syringe containing the clear liquid tested positive for methamphetamine.

On August 20, 2015, the State filed an Information alleging felony Possession of Methamphetamine. On October 5, 2015, Wass filed a motion to suppress the statements he made to Officer Drake with respect to the presence of syringes in his vehicle and any physical evidence

2

recovered as a result of those statements. Wass argued that he was not informed of his *Miranda* rights prior to being questioned.

At a hearing on October 22, 2015, the district court denied the motion to suppress. It held as follows:

> [T]he question is whether the drug evidence must be suppressed because the first - - because of the first unwarned statements about the syringes or does the second statements after the - - does the Miranda warnings given a few minutes later cure that problem.
>
> . . . I find that the officer did not tactically induce a confession prior to Miranda warnings - - or coerce a confession or use improper tactics to obtain the confession prior to Miranda warnings. And the second Miranda warnings does cure the failure to administer it the first time.
>
> It's not a coercion where the actual circumstances are calculated to undermine the suspect's ability to exercise free will. So I find that the second Miranda warnings does [sic] cure it. Once that happens, then the officer has reasonable articulable suspicion to search the automobile under the automobile search warrantless exception and he does search it and finds the items found in the case. So I'm denying the motion to suppress.

On December 22, 2015, Wass and the State entered into a plea agreement by which Wass agreed to plead guilty to felony Possession of Methamphetamine while reserving his right to appeal the district court's denial of his motion to suppress. The district court sentenced Wass to a suspended sentence of seven years with three years fixed. Wass appeals.

### III. ISSUE ON APPEAL

1. Did the district court err when it denied Wass' motion to suppress his oral admission that there were syringes in his vehicle?

### IV. STANDARD OF REVIEW

In reviewing a district court order granting or denying a motion to suppress evidence, the standard of review is bifurcated. *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005). This Court will accept the trial court's findings of fact unless they are clearly erroneous. *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007). However, this Court may freely review the trial court's application of constitutional principles in light of the facts found. *Id.*

*State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009).

### V. ANALYSIS

The United States Supreme Court first addressed the issue of whether admissions made in response to police questioning before *Miranda* warnings have the effect of rendering the same admissions made again after *Miranda* warnings inadmissible in the case of *Oregon v. Elstad*, 470

3

U.S. 298 (1985). *Elstad* arose out of the theft of roughly $150,000 of art and furniture from a home while the owners were on vacation. *Id.* A witness to the burglary contacted police and implicated Elstad, a friend of the owners' son. *Id.* Police arrived at Elstad's residence where he lived with his parents. *Id.* A police officer spoke with Elstad, at his residence, informing him that the police believed Elstad was involved in the burglary. *Id.* at 301. Elstad responded that he was present when the burglary took place. *Id.* Elstad was arrested and taken to the police station where he was advised of his *Miranda* rights. *Id.* Elstad indicated that he understood his rights and gave a full statement confessing to being involved in the burglary. *Id.* At trial, Elstad moved to have his post-*Miranda* admissions suppressed. *Id.* at 302. His motion to suppress was denied, and he was convicted on the evidence of his confession. *Id.* Elstad appealed to the Oregon Court of Appeals, which reversed his conviction, reasoning that Elstad's original statement was made in response to a *Miranda* violation and that not enough time had passed between Elstad's pre-*Miranda* statement at his house and his post-*Miranda* statement at the police station to cure the taint of the original violation. *Id.* at 303.

The United States Supreme Court reversed. *Id.* at 318. It held that the Oregon Court of Appeals had erred in treating a *Miranda* violation as equivalent to a constitutional violation. *Id.* at 304. It explained that a breach of *Miranda* does not necessarily mean a Fifth Amendment violation has occurred. *Id.* at 307. Accordingly, "errors [] made by law enforcement officers in administering the prophylactic *Miranda* procedures . . . should not breed the same irremediable consequences as police infringement of the Fifth Amendment itself." *Id.* at 309. The United States Supreme Court reasoned that:

> It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.
>
> . . . .
>
> . . . [A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded

4

admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

. . . .

. . . [T]here is no warrant for presuming coercive effect [with respect to the post-*Miranda* statement] where the suspect's initial inculpatory statement, though technically in violation of *Miranda*, was voluntary.

*Id.* at 309, 314, 318. Elstad's initial pre-*Miranda* statement, the United States Supreme Court concluded, "was voluntary, within the meaning of the Fifth Amendment." *Id.* at 315. Accordingly, it focused on the facts surrounding Elstad's post-*Miranda* warning statements and found that Elstad "knowingly and voluntarily waived his right to remain silent before he described his participation in the burglary." *Id.* The United States Supreme Court concluded that "[w]e hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Id.* at 318.

Twenty years later, the United States Supreme Court revisited *Elstad* in *Missouri v. Seibert*, 542 U.S. 600 (2004). *Seibert* arose out of the death of Jonathan Seibert, a twelve year old boy with cerebral palsy. *Id.* at 604. Following Jonathan's death, his mother, Patrice Seibert ("Patrice"), feared charges of neglect because her son's body was covered in bedsores. *Id.* In order to conceal the facts surrounding Jonathan's death, Patrice's two other sons and two of their friends devised a plan, with her knowledge, to set the family's mobile home on fire. *Id.* In order to avoid the appearance that Jonathan had been left alone, they set the mobile home on fire while Donald Rector, a mentally ill teenager living with the family was still inside. *Id.* Donald died in the fire. *Id.*

Five days later, at approximately 3:00 A.M., the police arrested Patrice and brought her to the police station. *Id.* Prior to the arrest, the arresting officer was specifically instructed by the officer scheduled to conduct the interrogation not to give Patrice *Miranda* warnings. *Id.* At the police station, the interrogating officer questioned Patrice for 30 to 40 minutes, squeezing her arm and repeating that "Donald was supposed to die in his sleep." *Id.* at 605. Patrice broke down and admitted that Donald was supposed to die in the fire. *Id.* Following Patrice's admission, the interrogating officer brought a tape recorder into the interrogation room, and it was only then that he informed Patrice of her *Miranda* rights. *Id.* During the taped interrogation that followed, the

5

interrogating officer confronted Patrice with her pre-*Miranda* statements in order to obtain a confession. *Id.*

At trial, the interrogating officer testified that he had made a "conscious decision" to initially withhold *Miranda* warnings from Patrice as an interrogation tactic. *Id.* at 606–07. The trial court suppressed the pre-*Miranda* statements but allowed evidence of the post-*Miranda* confession. *Id.* at 607. The Supreme Court of Missouri reversed, holding that the confession was clearly a product of the pre-*Miranda* statements and that the interrogating officer intended to deprive Patrice of the opportunity to exercise her *Miranda* rights. *Id.* The United States Supreme Court affirmed the Supreme Court of Missouri. *Id.* at 617. In a plurality opinion, Justice Souter reasoned that *Miranda* stands for the proposition that "a suspect must be adequately and effectively advised of the choice the Constitution guarantees." *Id.* at 611 (internal quotations and citations omitted). "By any objective measure, applied to circumstances exemplified here, it is likely that if the interrogators employ the technique of withholding warnings until after interrogation succeeds in eliciting a confession, the warnings will be ineffective in preparing the suspect for successive interrogation, close in time and similar in content." *Id.* at 613. "Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again." *Id.*

Writing for the plurality, Justice Souter distinguished *Seibert* from the holding in *Elstad*, by noting that

> in *Elstad*, it was not unreasonable to see the occasion for questioning at the station house as presenting a markedly different experience from the short conversation at home; since a reasonable person in the suspect's shoes could have seen the station house questioning as a new and distinct experience, the *Miranda* warnings could have made sense as presenting a genuine choice whether to follow up on the earlier admission.

*Id.* at 615–16,

In conclusion, Justice Souter identified several factors that a court should consider in determining whether post-*Miranda* statements are admissible:

> The contrast between *Elstad* and [*Seibert*] reveals a series of relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object: the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two

statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.

*Id.* at 615.

Justice Kennedy concurred in the judgment, but provided a different holding. *Id.* at 618. He agreed with the plurality opinion that "[t]he interrogation technique used in this case is designed to circumvent *Miranda v. Arizona* . . . . It undermines the *Miranda* warning and obscures its meaning." *Id.* Justice Kennedy differed with the plurality, however, writing that

> [t]he plurality concludes that whenever a two-stage interview occurs, admissibility of the postwarning statement should depend on "whether the *Miranda* warnings delivered midstream could have been effective enough to accomplish their object" given the specific facts of the case. . . . I would apply a narrower test applicable only in the infrequent case, such as we have here, in which the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning.

*Id.* at 621–22.

Interpretation of the *Seibert* opinion is currently subject to a circuit split. The majority of circuits, including the Ninth Circuit Court of Appeals, have determined that Justice Kennedy's concurrence, and not Justice Souter's plurality opinion, contains the precedential holding of the case.

> Ordinarily, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) . . . .
> . . . [B]oth the plurality and Justice Kennedy agree that where law enforcement officers *deliberately* employ a two-step interrogation to obtain a confession and where separations of time and circumstance and additional curative warnings are absent or fail to apprise a *reasonable person* in the suspect's shoes of his rights, the trial court should suppress the confession. This narrower test—that excludes confessions made after a deliberate, objectively ineffective mid-stream warning—represents *Seibert*'*s* holding. In situations where the two-step strategy was not deliberately employed, *Elstad* continues to govern the admissibility of postwarning statements.

*U.S. v. Williams*, 435 F.3d 1148, 1157–58 (9th Cir. 2006). Other circuit courts have come to the same conclusion. *See U.S. v. Courtney*, 463 F.3d 333, 338 (5th Cir. 2006) ("we find *Seibert*'s holding in Justice Kennedy's opinion concurring in the judgment."); *U.S. v. Kiam*, 432 F.3d 524, 532 (3d Cir. 2005) ("This court applies the *Seibert* plurality opinion as narrowed by Justice

Kennedy. . . . Once we determine that the *Miranda* violation was not deliberate, we must fall back on *Elstad* as instructed by Justice Kennedy."); *U.S. v. Mashburn*, 406 F.3d 303, 309 (4th Cir. 2005) ("Justice Kennedy's opinion therefore represents the holding of the *Seibert* Court: The admissibility of postwarning statements is governed by *Elstad* unless the deliberate 'question-first' strategy is employed."); *U.S. v. Briones*, 390 F.3d 610, 613 (8th Cir. 2004) ("Because Justice Kennedy relied on grounds narrower than those of the plurality, his opinion is of special significance."); *U.S. v. Stewart*, 388 F.3d 1079, 1090 (7th Cir. 2004) ("Justice Kennedy thus provided a fifth vote to depart from *Elstad,* but only where the police set out deliberately to withhold *Miranda* warnings until after a confession has been secured. Where the initial violation of *Miranda* was not part of a deliberate strategy to undermine the warnings, *Elstad* appears to have survived *Seibert*.").

We hereby adopt the analysis of *Seibert* promulgated by the majority of circuit courts. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks*, 430 U.S. at 193 (internal quotations and citation omitted). In *Seibert*, the Plurality set forth a multi-factor analysis to be applied in every instance of two-stage interrogation. Justice Kennedy agreed to the Plurality's framework, but only in cases in which the two stage-interrogation was the result of an intentional tactic to induce a confession and not in the case of mistake or accident. Accordingly, the more narrow holding of *Seibert* is Justice Kennedy's; the Plurality's multi-factor analysis is applicable only in cases of intentional two-stage interrogations.

It follows that *Seibert* does not apply to this case. There is no evidence that the district court erred when it determined that Officer Drake did not intentionally use a two-stage interrogation technique as a tactic to induce a confession. Rather, all of the evidence presented to the district court indicates that Officer Drake made a mistake questioning Wass before giving him his *Miranda* rights, realized his mistake, and immediately attempted to correct his mistake by giving Wass his *Miranda* warnings and questioning him again.

Because *Seibert* does not apply here, *Elstad* governs our analysis. Under *Elstad*, a suspect's prior, voluntary statements made in violation of *Miranda* do not preclude the trier of fact from concluding that the suspect's later voluntary statements made after being administered *Miranda* rights were the result of a rational and intelligent choice to waive those rights. Wass did

8

not contend in the district court that either his pre- or post-*Miranda* statements were coerced. Therefore, we uphold the court's decision that his post-*Miranda* statements were admissible.

## VI. CONCLUSION

This Court affirms the district court's judgment of conviction.

Chief Justice BURDICK, Justices EISMANN, HORTON and BRODY **CONCUR**.