302 Ga. 809
FINAL COPY

S17A1728.  ANDREWS v. THE STATE.

HUNSTEIN, Justice.

Appellant Javin Rashad Andrews was tried and convicted of malice murder and a related offense in connection with the November 2010 shooting death of Ricardo Francois.[1]  Andrews appeals, alleging the trial court

---

[1] On May 10, 2012, a Cobb County grand jury jointly indicted Andrews and James Levone Mitchell for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on armed robbery (Count 3), aggravated assault (Count 4), armed robbery (Counts 5 and 6), and possession of a firearm during the commission of a crime (Counts 7-9).  Andrews' first trial took place from February 25-28, 2013; he was tried alone.  At the close of the State's case, the trial court directed a verdict of acquittal as to Count 5 (armed robbery).  The case was subsequently submitted to the jury, which was unable to reach a verdict, and a mistrial was declared.

Prior to Andrews' second trial, the State nolle prossed Counts 3, 6, and 9.  On May 13-16, 2013, Andrews was re-tried on his remaining counts, and the jury found him guilty of all charges.  Andrews was sentenced to life for malice murder (Count 1) and five years consecutive for possession of a firearm during the commission of a crime (Count 7).  The remaining charges were either vacated by operation of law or merged for sentencing purposes.  Andrews timely filed a motion for new trial on May 29, 2013, which he amended on July 13, 2016, through new counsel.  Andrews waived an evidentiary hearing; the trial court subsequently denied the motion as amended in an order filed on November 17, 2016.  Andrews timely filed a notice of appeal; this case was docketed to the August 2017 term of this Court and was thereafter submitted for decision on the briefs.

erroneously admitted his custodial statements at trial. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established that, on November 20, 2010, cab driver Ricardo Francois picked up Andrews and his co-indictee James Mitchell[2] from a Walmart parking lot. Andrews sat behind Francois, while Mitchell sat behind the empty front passenger seat. Francois drove Andrews and Mitchell to Cumberland Mall but, by the time they arrived, it had closed. Andrews subsequently requested that Francois take them to Lincoln Hills Apartments in Cobb County, Georgia, which was adjacent to an apartment complex where Andrews resided with his mother. Upon their arrival, Andrews shot Francois in the back of the head. Francois died as a result of the gunshot wound.

At the crime scene, officers located a .25 caliber shell casing on the floor of the cab. A GBI firearms examiner determined that the bullet was fired from either a FIE or Tanfoglio .25 ACP pistol.

The case went cold until late January 2012, when law enforcement received information that, around the time of the murder, Andrews had

_____

[2] Mitchell testified as a witness for the State at Andrews' second trial.

confessed to shooting a cab driver. Specifically, Andrews had told others that: he rode to the mall in a cab with a friend; he had the cab take him home; he shot the driver in the back of the head; and the shooting was for money.

This information led law enforcement to apply for a search warrant for Andrews' DNA, as well as his finger and palm prints. On February 6, 2012, detectives executed the warrant at the Cobb County Detention Center where Andrews was being held on unrelated charges. While speaking with officers, Andrews eventually admitted to taking a cab to Cumberland Mall with Mitchell on the night Francois was killed and to previously possessing a .25 caliber semiautomatic handgun; however, he denied being involved in the murder.

Officers subsequently obtained a search warrant for Andrews' residence. There, they spoke with Calandrial Afriyie, Andrews' mother. She provided officers with photographs of a .25 caliber Titan pistol (a weapon that is manufactured by FIE) that she had taken in January 2011 after discovering the pistol in Andrews' jacket. According to Afriyie, when she confronted Andrews about the weapon, he took the gun from the house; it was never recovered. Officers also located cell phones at the residence belonging to Andrews. One

3

cell phone contained photographs of Andrews taken less than a week after the murder holding a .25 caliber gun.

Andrews was interviewed by law enforcement a second time on February 14, 2012, during which he admitted to being in the cab the night the driver was murdered, but implicated Mitchell as the shooter.

1. Though not enumerated by Andrews, we find that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Andrews was guilty of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Prior to trial, Andrews moved to suppress his February 6 and February 14 custodial statements to law enforcement, alleging that the statements were not made freely and voluntarily. After holding a Jackson-Denno[3] hearing, the trial court found the statements to be freely and voluntarily given without hope of benefit, coercion, or fear of injury. Andrews argues now, as he did below, that the trial court erred in admitting both February statements

_____

[3] Jackson v. Denno, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

4

because they were not freely and voluntarily given. We find this argument to be without merit.

"The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances." Vergara v. State, 283 Ga. 175, 176 (657 SE2d 863) (2008). "Although we defer to the trial court's findings of disputed facts, we review de novo the trial court's application of the law to the facts." Clay v. State, 290 Ga. 822, 823 (725 SE2d 260) (2012). We "will not disturb the trial court's factual and credibility determinations unless they are clearly erroneous." Wright v. State, 285 Ga. 428, 432 (677 SE2d 82) (2009).

The record supports the trial court's findings that Andrews' statements were made freely and voluntarily. Andrews was informed of and understood his Miranda[4] rights. Although he refused to sign the written waiver, the audio recordings of both interviews establish that Andrews was verbally advised of these rights. See Thomas v. State, 268 Ga. 135, 138 (485 SE2d 783) (1997) ("[T]he mere fact that there was no written waiver of Miranda rights or other

---

[4] Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

written record of such waiver did not render his statement inadmissible.") After receiving the verbal warnings, Andrews agreed to speak with law enforcement without an attorney, never requested to stop the interview, was not promised a hope of benefit, and was not coerced into making his statements. Based on the totality of the circumstances,[5] and providing the proper deference to the findings of the trial court, we find no error.

Andrews also claims that, because the February 6 interrogation began prior to the reading of his <u>Miranda</u> rights, his admission that he was in a cab at the mall on the night of the murder was the product of an improper "two-stage interrogation" in violation of <u>Missouri v. Seibert</u>, 542 U. S. 600 (124 SCt 2601, 159 LE2d 643) (2004) and <u>State v. Pye</u>, 282 Ga. 796 (653 SE2d 450) (2007). We disagree.

We previously described the two-stage technique as

---

[5] Andrews argues that the nine factors laid out by this Court in <u>Riley v. State</u>, 237 Ga. 124 (226 SE2d 922) (1976) should control our analysis regarding voluntariness. However, as we have repeatedly explained, the <u>Riley</u> test only applies to evaluating custodial statements made by juveniles, not adults. See, e.g., <u>Vergara</u>, 283 Ga. at 177 (1). At the time of his custodial interview, Andrews was 17 years old, and "we have recognized that <u>Riley</u> does not apply to the admissibility of statements by persons who have reached the age of 17 because such persons are no longer considered juveniles by our criminal justice system." <u>Woodard v. State</u>, 277 Ga. 49, 50 (2) (586 SE2d 330) (2003). See also <u>Reynolds v. State</u>, 275 Ga. 548, 549 (3) (569 SE2d 847) (2002).

an "interrogation procedure in which police first question a suspect without administering <u>Miranda</u> warnings, gain a statement from the suspect, then administer <u>Miranda</u> warnings, and have the suspect repeat that which the suspect has already related, often with little interruption in time." [Cit.] Under such circumstances, post-warning statements must be suppressed because it is unlikely that the <u>Miranda</u> warnings will effectively advise a suspect of his rights. [Cits.]

<u>Fennell v. State</u>, 292 Ga. 834, 836 (3) (741 SE2d 877) (2013).

Here, Andrews "was not enticed to admit to the crime, given <u>Miranda</u> rights, and asked to repeat the pre-<u>Miranda</u> admission." <u>State v. Folsom</u>, 286 Ga. 105, 110 (2) (686 SE2d 239) (2009). Compare <u>Pye</u>, 282 Ga. at 801-802 (statement made as a product of improper two-stage technique where initial pre-<u>Miranda</u> questions led to defendant "implicating himself in the crimes, and then, without any break in the proceedings, was given <u>Miranda</u> warnings . . . and gave a statement that was essentially identical to the version of events he had already revealed to the detectives"). Indeed, it is questionable as to whether Andrews' pre-<u>Miranda</u> statement was incriminating. Even if we assume it was, Andrews continued to deny involvement in the murder, and the topics he discussed with the officers after he was read his rights were markedly different than in their pre-<u>Miranda</u> conversation. See <u>Fennell</u>, 292 Ga. at 836 (3) (finding officers did not

use improper two-stage interrogation technique where "the post-<u>Miranda</u> interrogation differed not only in the completeness and detail of the questions asked by the detectives but also in the content of appellant's statements"). Based on the foregoing, we find no error.

<u>Judgment affirmed.  All the Justices concur.</u>

Decided January 29, 2018.

Murder. Cobb Superior Court. Before Judge Leonard.

Strickland Webster, Sydney R. Strickland, for appellant.

D. Victor Reynolds, District Attorney, Michael S. Carlson, Amelia G. Pray, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, S. Taylor Johnston, Assistant Attorney General, for appellee.