303 Ga. 297
FINAL COPY

S17A1583.  THE STATE v. ABBOTT.

HINES, Chief Justice.

This is an appeal by the State from an order of the superior court suppressing video-recorded statements that defendant Dijon Cortez Abbott gave to an investigator to be used in his prosecution for murder and other crimes. See OCGA § 5-7-1 (a) (4); *State v. Andrade*, 298 Ga. 464 (782 SE2d 665) (2016). For the reasons that follow, we affirm in part, vacate in part, and remand the case with direction.

On September 10, 2013, a Richmond County grand jury returned an indictment charging Abbott with murder and the related crimes of aggravated assault, possession of a firearm during the commission of a crime, unlawful gang activity, criminal damage to property in the second degree, and reckless conduct, all in connection with the fatal shooting of Marques Eubanks and the

wounding of two other individuals on July 18, 2013.[1] There were two suppression hearings, at which Investigator Chris Langford and Deputy Sheriff Beverly Hoffman-Wright testified. Following the hearings, the superior court entered its order suppressing the entirety of Abbott's video-recorded statements.

In its order, the superior court found the following, all of which is supported by the video-recorded interview or the transcripts of the suppression hearings. During a shooting between members of two rival gangs at a house party late in the evening, Abbott shot and killed one man and seriously injured another. Abbott claims that, at the same time, he was shot in the right leg and left arm, and he also was injured when fleeing across a wooden fence. He subsequently had a bandage on his left arm and clearly had a painful injury below his right knee. Based on the sheriff's investigation, Abbott, who was a 17-year-old high school student, was identified as a suspect or person of interest. On the day after the shooting, four or five sheriff's vehicles converged on Abbott's mother's house. He was not present but appeared shortly after his mother telephoned him. Abbott was placed in the back of Deputy Hoffman-

---

[1] Abbott and others were also charged in the same indictment with multiple crimes occurring on June 30 and July 21, 2013.

Wright's patrol car and was not handcuffed, shackled, or questioned at that time. Instead, he was transported to the criminal investigation division of the sheriff's office and placed in an interrogation room with his left leg shackled to the floor. He was left alone in that condition for at least 32 minutes until Investigator Langford entered the room. Abbott was not told that he could leave at anytime, and he was interrogated for 53 minutes before being informed of his *Miranda* rights.[2] In the course of that pre-*Miranda* interrogation, Abbott admitted that he was present at the party, subsequently admitted that he possessed a pistol, and later admitted that he shot three times in the house and three times outside. Immediately after Abbott's admission of firing inside the house, Langford gave Abbott the *Miranda* warnings, had him sign a waiver form, resumed the interrogation for 34 minutes, and obtained further incriminating admissions. The possibility of self-defense was discussed extensively. After the conclusion of the interrogation, Abbott remained in the interrogation room for at least 56 more minutes, during which time deputies gave him some aid for his wounds and performed a DNA swab test. Based on its findings, the superior court

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

concluded that Abbott was in custody no later than the time when he was placed in the interrogation room and shackled to the floor, because no reasonable person could believe that he was free to leave under Abbott's circumstances. Considering all of the circumstances, the superior court not only excluded Abbott's pre-*Miranda* statements, it also excluded all of his post-*Miranda* statements as having resulted from an "interrogate first, warn later" procedure that violated *Missouri v. Seibert*, 542 U. S. 600, 616-617 (124 SCt 2601, 159 LE2d 643) (2004), and *State v. Pye*, 282 Ga. 796, 803 (653 SE2d 450) (2007).

1. Initially, we address the State's contention regarding the standard of review. "'In reviewing a ruling on the admissibility of a defendant's statements where the facts are disputed, we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the law to the facts.'" *Teasley v. State*, 293 Ga. 758, 762 (3) (749 SE2d 710) (2013) (citation omitted). The State, however, argues that we should review the facts de novo because the interview of Abbott was video-recorded and the trial court made no findings as to witness credibility. It is true that the reviewing court may "consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no

4

questions of credibility, such as facts indisputably discernible from a videotape." *State v. Allen*, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015) (citation and punctuation omitted). On the other hand, to the extent that legally significant facts were proved by evidence other than the video recording, the trial court as factfinder was entitled to determine the credibility and weight of that other evidence. See *State v. Chulpayev*, 296 Ga. 764, 771 (2), n. 5 (770 SE2d 808) (2015). Here, for example, as to the officers who testified about their interaction with Abbott, the trial court "*could* have assigned no weight at all" to their testimony. *Hughes v. State*, 296 Ga. 744, 747 (1) (770 SE2d 636) (2015) (emphasis in original).

> "Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." . . . [E]specially where, as here, the trial court has made extensive findings of fact, we generally must presume that the absence of a finding of a fact that would tend to undermine the conclusion of the trial court reflects a considered choice to reject the evidence offered to prove that fact, especially where there were grounds upon which the trial court properly *could* have assigned no weight to such evidence.

Id. (citation and punctuation omitted; emphasis in original).

5

2. With these principles in mind, we turn to the State's contention that the superior court erred in finding that the pre-*Miranda* phase of the interview constituted *custodial* interrogation.

> A person is considered to be in custody and *Miranda* warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary. Thus, the proper inquiry is how a reasonable person in [Abbott]'s shoes would have perceived his situation.

*State v. Troutman*, 300 Ga. 616, 617 (1) (797 SE2d 72) (2017) (citations and punctuation omitted). The State argues that the superior court failed to consider that Abbott voluntarily went to the sheriff's office to further a narrative that he was merely a gunshot victim. Most of the evidence on which the State relies is from the testimony of the officers at the suppression hearing, such as the testimony that Abbott would have been in handcuffs if he had been in custody, that he did not ask his mother to accompany him, that he was not first taken into the booking area, and that he knew his peers were at the office apparently being interviewed as witnesses. The superior court's findings and the video recording, however, show that Abbott was never told he was free to leave, that he was kept in a closed interrogation room before and during the entire interview, see *State*

6

*v. Folsom*, 286 Ga. 105, 108 (1) (686 SE2d 239) (2009), and, most important, that he was kept shackled to the floor in that room not only for the entire interrogation, but also for something over half an hour while he was alone before the interrogation even began.

In general, "[r]esort to physical restraint is almost certain to result in a holding that an arrest had been made." 3 Wayne R. LaFave, Search and Seizure § 5.1 (a) (5th ed.). The notable exceptions to this observation involve either a second-tier investigatory stop or a first-tier encounter when the defendant has voluntarily consented to an interview and is handcuffed during transportation in a police car as a reasonable safety measure and the handcuffs are removed before the evidence as to which the defendant seeks suppression is obtained. *Wingate v. State*, 296 Ga. 21, 25-26 (2) (b) (764 SE2d 833) (2014). Abbott was not detained pursuant to a limited investigatory stop, and he was left alone and shackled for more than half an hour, unable even to move around the closed interrogation room, much less leave the room or ask for the shackle to be removed so that he could leave. See id. at 26 (2) (b); *State v. Nelson*, 261 Ga. 246, 247 (1) (b) (404 SE2d 112) (1991). When an officer finally entered the room, he did not remove the shackle or ever give any indication that Abbott was

free to leave or terminate the interview. See *Folsom*, 286 Ga. at 108 (1). Nor did the officer explain to Abbott why he was shackled. It is not significant that Langford testified the shackling was a security measure or that Abbott appeared cooperative in an attempt to further his own narrative, not only because the superior court's order neither refers to that testimony of Langford's nor draws an inference regarding Abbott's cooperation, but also because "[t]he test is an objective one, and stressing the officers' motivation of self-protection does not speak to how their actions would reasonably be understood." *Kaupp v. Texas*, 538 U. S. 626, 632 (123 SCt 1843, 155 LE2d 814) (2003) (citation omitted). Accordingly, it cannot be said that the superior court erred in its determination that a reasonable person in Abbott's situation would believe that he was in custody, and, to the extent that the court concluded that Abbott's pre-*Miranda* statements had to be suppressed, its judgment must be upheld. See *Folsom*, 286 Ga. at 108 (1).

3. The State further contends that the superior court erred in finding that Investigator Langford had employed a two-step interrogation technique in violation of *Seibert*. The superior court never found, and Abbott does not claim, that any of his video-recorded statements were involuntary under traditional due

process standards. Cf. *Troutman*, 300 Ga. at 618 (2). As a result, we must apply the general rule of *Oregon v. Elstad*, 470 U. S. 298 (105 SCt 1285, 84 LE2d 222) (1985), "'that the existence of a pre-warning statement does not require suppression of a post-warning statement that was knowingly and voluntarily made, [id.] at 309,'" unless *Seibert*'s exception to that rule is applicable. *Norwood v. State*, 303 Ga. 78, 83 (2) (a) (810 SE2d 554) (2018) (citation omitted).

> The Supreme Court's decision in *Seibert* deals with what the Court referred to as a "two stage" or "question first" interrogation procedure, in which police first question a suspect without administering *Miranda* warnings, gain a statement from the suspect, then administer *Miranda* warnings, and have the suspect repeat that which the suspect has already related, often with little interruption in time.

*Pye*, 282 Ga. at 799 (citation omitted). In *Pye*, we followed the plurality opinion authored by Justice Souter in *Seibert*, which required an examination of the circumstances, rather than the intent of law enforcement, to determine whether the *Miranda* warnings were effective. Id. at 799-800. And we rejected the argument that the concurrence by Justice Kennedy constituted the narrowest ground of the Supreme Court's decision, which would require a finding of subjective intent on the part of police to employ a deliberate "two-step" strategy.

9

Id. at 800, n. 6. The superior court carefully quoted and applied the analysis of both the plurality opinion in *Seibert* and this Court's opinion in *Pye*. "Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts." *Hughes*, 296 Ga. at 750 (2).

Since our decision in *Pye*, a clear and strong majority of federal circuits and state courts have decided that Justice Kennedy's concurrence in *Seibert* must be applied instead of Justice Souter's plurality opinion. See *United States v. Carter*, 489 F3d 528, 535-536 (2d Cir. 2007); *State v. Wass*, 396 P3d 1243, 1248 (Idaho 2017), petition for cert. filed, No. 17-425 (U. S. Sept. 20, 2017); *Kuhne v. Commonwealth*, 733 SE2d 667, 672-673 (Va. App. 2012). See also *Reyes v. Lewis*, 833 F3d 1001, 1002-1003 (9th Cir. 2016) (W. Fletcher, J., concurring in the denial of rehearing en banc); David M. Nissman & Ed Hagen, Law of Confessions § 9:6 (2d ed.) ("Most courts applying *Seibert* have agreed that Justice Kennedy's concurring opinion . . . fairly states the rule to be applied in these cases."). The rationale for following the Kennedy concurrence is well summarized in *Kuhne*:

"[W]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U. S. 188, 193 (97 SCt 990, 51 LE2d 260) (1977) (citation omitted). The plurality and Justice Kennedy agree that where law enforcement officers deliberately employ a two-step interrogation to obtain a confession and where separations of time and circumstance and additional curative warnings are absent or do not inform a reasonable person in the suspect's position of his rights, the trial court must suppress the incriminating statement. The *Seibert* plurality would review all two-step interrogations under a multi-factor test designed to determine whether the subsequent warnings "could be effective enough to accomplish their object." *Seibert*, 542 U. S. at 615-16. Justice Kennedy's opinion would apply a form of heightened scrutiny only to those two-step cases in which law enforcement officers deliberately employed a two-step procedure designed to weaken *Miranda*'s protections. 542 U. S. at 621-22. Justice Kennedy's concurring opinion, therefore, represents the narrowest ground and, consequently, constitutes the holding in *Seibert*.

733 SE2d at 672-673 (emphasis omitted). See also *United States v. Williams*, 435 F3d 1148, 1157-1158 (9th Cir. 2006); id. at 1157 ("We need not find a legal opinion which a majority joined, but merely a legal standard which, when applied, will necessarily produce results with which a majority of the Court from that case would agree." (citation and punctuation omitted)); Joshua I. Rodriguez, *Interrogation First, Miranda Warnings Afterward: A Critical Analysis of the Supreme Court's Approach to Delayed Miranda Warnings*, 40

11

Fordham Urb. L. J. 1091, 1126-1129 (2013); Locke Houston, Comment, *Miranda-in-the-Middle: Why Justice Kennedy's Subjective Intent of the Officer Test in Missouri v. Seibert is Binding and Good Public Policy*, 82 Miss. L. J. 1129, 1154-1157 (2013). Consistent with this rationale and with the majority of jurisdictions, we looked to Eleventh Circuit precedent and applied Justice Kennedy's concurrence just last month, noting that, as explained in *United States v. Street*, 472 F3d 1298, 1313 (11th Cir. 2006), "'(b)ecause *Seibert* is a plurality decision and Justice Kennedy concurred in the result on the narrowest grounds, it is his concurring opinion that provides the controlling law.'" *Norwood*, 303 Ga. at 83 (2) (b), n. 4. In *Norwood*, however, we did not mention our contrary ruling in *Pye*. In light of that omission, we now clarify *Norwood* by expressly overruling *Pye*, together with any Georgia case relying on *Pye*, to the extent that it applied the *Seibert* plurality instead of the Kennedy concurrence.[3] See, e.g., *Andrews v. State*, 302 Ga. 809, 812 (2) (809 SE2d 746)

---

[3] This issue is the basis for a petition for certiorari in *Wass*, 396 P3d 1243, that, as noted above, is currently pending in the Supreme Court of the United States, which requested and received a response brief. It appears that the Supreme Court has not yet fully and finally resolved the issue. See *Bobby v. Dixon*, 565 U. S. 23, 30-32 (132 SCt 26, 181 LE2d 328) (2011) (per curiam); 2 William J. Rich, Modern Constitutional Law § 27:32 & n. 7.50 (3rd ed.) (stating that in *Bobby*, "the Supreme Court adopted Justice Kennedy's limited approach, at least in the context of habeas corpus review," and found no clearly established federal law

(2018); *Fennell v. State*, 292 Ga. 834, 836 (3) (741 SE2d 877) (2013); *State v. Folsom*, 286 Ga. 105, 108-110 (2) (686 SE2d 239) (2009); *State v. Kendrick*, 309 Ga. App. 870, 873-877 (2) (711 SE2d 420) (2011).

Justice Kennedy's "narrower test" is "applicable only in the infrequent case . . . in which the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning." *Seibert*, 542 U. S. at 622 (Kennedy, J., concurring in the judgment). In *Norwood*, we joined the Eleventh Circuit in recognizing that, in deciding whether law enforcement officers used a deliberate "question first" strategy, the trial court must "consider the totality of the circumstances including the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and post-warning statements." 303 Ga. at 83, 84 (2) (b). The trial court must also consider, however, evidence as to whether the sheriff or police department had "protocols, customs, or training that required officers to use a deliberate two-step interrogation technique," as well as testimony by the

---

to the contrary of the Ohio Supreme Court decision being reviewed). Obviously, if the United States Supreme Court grants the petition in *Wass* and resolves the issue presented therein, the resulting decision will prevail to the extent that it conflicts with this opinion or *Norwood*.

13

interrogating officer that he either did or did not employ a strategy of deliberately questioning the defendant without *Miranda* warnings in order to solicit a confession, planning to later warn him and ask him to repeat the pre-*Miranda* admission.[4] *United States v. Douglas*, 688 Fed. Appx. 658, 665 (11th Cir. 2017).

In this case, the superior court did not address the existence, credibility, or weight of any such evidence, nor did the court make any findings or draw any conclusion as to whether Langford's two-step interrogation was a deliberate strategy, used in a calculated way to undermine the *Miranda* warning. The superior court did not consider the totality of circumstances as part of determining Langford's subjective intent pursuant to Justice Kennedy's concurrence in *Seibert*. We cannot presume that the superior court either accepted evidence tending to prove a deliberate two-step strategy by law enforcement or rejected any evidence tending to prove the absence of such a strategy, because the court had no reason to consider any of the evidence under

---

[4] If the trial court does decide that the deliberate "question first" strategy has been used, post-warning statements that are related to the substance of pre-warning statements must be excluded unless specific, curative measures were taken before the post-warning statements were made. See *Seibert*, 542 U. S. at 621, 622; *Street*, 472 F3d at 1314.

14

the standard set forth in the Kennedy concurrence. Cf. *Hughes*, 296 Ga. at 747 (1). Instead, the superior court applied the legal standard set forth in the *Seibert* plurality and adopted in *Pye*. Through no fault of its own, the superior court applied a legal standard that this Court subsequently rejected in *Norwood*. Accordingly, the superior court's judgment suppressing Abbott's post-*Miranda* statements is vacated, and the case is remanded so that the superior court may make further findings of fact and apply the correct legal standard, as clarified in our opinion today. See *State v. Folsom*, 285 Ga. 11, 13 (1) (673 SE2d 210) (2009). See also *Hughes*, 296 Ga. at 746 (1), n. 6 ("If the trial court has made express findings of fact, but not with sufficient detail to permit meaningful appellate review, an appellate court may remand for further findings.").

Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.

Decided March 15, 2018.

Murder, etc. Richmond Superior Court. Before Judge Roper.

Natalie S. Paine, District Attorney, Joshua B. Smith, Tyler M. Gray, Assistant District Attorneys, for appellant.

Ricardo Bravo; Charles R. Sheppard, for appellee.