NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 12, 2025

S25A0783. ROBINSON v. THE STATE.

PETERSON, Chief Justice.

Yohansea Yusef Robinson appeals from the denial of his motion to withdraw his guilty plea, arguing that his plea was not knowing or voluntary because he suffered a seizure about an hour before the plea colloquy. The record evidence supports the trial court's conclusion that at the time Robinson entered his plea, he did so freely and with a full understanding of the nature of the charges against him and the consequences of his plea. We affirm.

According to the factual basis presented by the State at the plea hearing, Robinson was driving a car on a highway with Felicia Putney as his passenger. A police officer noticed Robinson driving erratically and attempted to initiate a traffic stop. Robinson led the police on a high-speed chase, traveling at speeds more than 100

miles per hour, exiting and entering the highway multiple times, and driving through a red light. As he drove through one intersection, Robinson lost control of the vehicle and crashed into a utility pole, splitting his car in two. The passenger side continued traveling across the highway and crashed into another vehicle. Putney was ejected from the car and died.

Robinson was charged with two counts of felony murder predicated on fleeing and attempting to elude a police officer (Counts 1 and 3), two counts of fleeing and attempting to elude a police officer (Counts 2 and 4), homicide by vehicle in the first degree (Count 5), criminal damage to property in the first degree (Count 6), driving while license suspended (Count 7), reckless driving (Count 8), speeding (Count 8), improper driving on divided highway (Count 10), and disregarding traffic control device (Count 11). Prior to trial, the State filed a notice of evidence in aggravation of sentence, as well as notice of its intent to seek a recidivist sentence of life without the possibility of parole.

According to plea counsel, on the day Robinson's trial was

scheduled to begin, Robinson informed counsel that he did not want to go to trial and was willing to plead guilty if the State withdrew the recidivist notice and would agree to a life sentence with the possibility of parole. The State announced to the court that it had agreed to withdraw the recidivist notice, move to nolle pross Counts 2-4 and 7-11, and recommend a life sentence on Count 1 and concurrent sentences on Counts 5 and 6, if Robinson pleaded guilty to those counts. At the start of the plea colloquy, Robinson stated under oath that he heard and understood the court. When asked if he was under the influence of any medication, drugs, or alcohol, Robinson responded that he took "Keppra for petit mal seizures," but confirmed that he understood what was happening. During the plea colloquy, Robinson also confirmed that he had had sufficient time to review his case with plea counsel; he was satisfied with counsel's performance; no one had threatened or coerced him into pleading guilty; he was aware of the maximum sentences for the relevant counts; he was aware of the rights he would be waiving by pleading guilty; and he was entering into the plea freely and voluntarily.

The trial court accepted Robinson's plea and sentenced him to life in prison with the possibility of parole on Count 1, a 15-year concurrent term in prison on Count 5, and a 10-year concurrent term in prison on Count 6.

Represented by new counsel, Robinson moved to withdraw his plea, arguing that his plea was not knowingly, voluntarily, and intelligently entered based on Robinson having had a seizure on the day he entered his plea.[1] At the hearing on the motion, plea counsel testified as follows. In preparing for trial, Robinson had informed plea counsel of his seizure disorder and provided medical documentation in support. Robinson indicated that he wanted his seizure disorder to be a part of his defense, but after having his records reviewed by a medical expert, plea counsel did not believe this was a viable defense because it was "unlikely he would be able to bob and weave out of traffic in excess of 100 miles an hour" if he had been experiencing a seizure.

---

[1] Although Robinson raised several grounds in his motion, new counsel stated that he was pursuing only the knowing and voluntary claim.

Plea counsel did not observe Robinson have any seizures until the day he entered his guilty plea. She stated that while she was reviewing the waiver-of-rights form with Robinson in advance of his guilty plea, he "kind of froze" with his head down and arms limp at his sides. Robinson remained in this state for about two minutes before he "seemed to kind of come back" and began to speak slowly. Robinson told counsel that the "freezing" incident was consistent with the seizures he experienced. Plea counsel informed the district attorney and the judge about the incident. As a result of working in mental health courts, plea counsel said she knew she had to orient Robinson by asking a series of questions to ensure that he was "there and aware of what [he was] doing." After about an hour of orienting Robinson as to time and place, plea counsel felt comfortable continuing with the review of the waiver of rights form because Robinson appeared to be okay.

During that review, plea counsel did not observe any signs that Robinson did not understand all the rights that were discussed, and she stated that she would not have completed the plea paperwork

with Robinson or submitted it if she did not believe he understood his rights or understood what he was doing. Plea counsel also said that Robinson was coherent and appeared to understand everything during the plea colloquy and that he did not indicate he had any issues understanding the court. Plea counsel said that she would have intervened if she had any doubts in this respect.

Robinson also testified at the hearing, generally describing his history of seizures. Robinson said that he did not remember having had a seizure on the day of his plea hearing. He said he learned about it from another inmate who was in the courtroom and had witnessed the events. Robinson stated that plea counsel's description was consistent with some of his seizures. He acknowledged answering questions during the plea proceeding, but did not recall details of the proceeding and testified that he had not known that he was pleading guilty. Robinson said that he asked counsel to withdraw his plea after he learned he had a seizure during the proceeding.

After the hearing, the trial court denied Robinson's motion to

withdraw his plea. Although the court suggested some skepticism as to whether Robinson actually had a seizure,[2] it nevertheless credited plea counsel's testimony that Robinson recovered from the claimed seizure and appeared to understand what he was doing during the colloquy. It also referred to the transcript of the plea colloquy, which demonstrated that Robinson understood the nature of the proceeding and the consequences for pleading guilty. The court further found that Robinson's testimony regarding his plea was not credible and was inconsistent with plea counsel's testimony and with his own testimony during the plea colloquy.

1. On appeal, Robinson argues that the trial court erred in denying his motion to withdraw his guilty plea because the record shows that he suffered a seizure about an hour before pleading guilty. We see no error in the trial court's denial of his motion.

---

[2] Plea counsel stated that she was not sure that Robinson actually had a seizure that day and felt like he may have been "faking" it. She then qualified her opinion, stating that she was not a seizure expert, the symptoms she saw were not the type of seizure symptoms she had experience with, and she may have been thinking of grand mal seizures instead of the petit mal seizures Robinson indicated he experienced.

"After sentencing, the decision on a motion to withdraw a guilty plea is within the trial court's discretion, and withdrawal of the plea is allowed only when necessary to correct a manifest injustice." *Powell v. State*, 309 Ga. 523, 524 (2020). Although what constitutes a manifest injustice will vary from case to case, it exists when, for example, "the guilty plea was entered involuntarily or without an understanding of the nature of the charges." Id. (citation and punctuation omitted).

When a defendant moves to withdraw a guilty plea on the basis that it was not knowing and voluntary, the State bears the burden of showing that it was knowing and voluntary based on the record. See *Johnson v. State*, 303 Ga. 704, 706–07 (2018). "To determine whether a guilty plea is valid, the record must show that the defendant understood the plea, the nature of the charges, and the constitutional rights that he is relinquishing." *Powell*, 309 Ga. at 524 (1) (citations omitted). When reviewing a trial court's determination that a defendant's plea was knowing and voluntary, we accept the court's factual findings unless they are clearly erroneous, defer to its

8

credibility determinations, and review its ultimate conclusion de novo. See *Harris v. State*, 319 Ga. 133, 137 (2024); *Powell*, 309 Ga. at 524–25 (1).

Robinson challenges the trial court's skepticism that he actually suffered a seizure. But despite its doubts, the trial court did not base its determination on that skepticism. Instead, the trial court focused on Robinson's behavior and condition at the time of the colloquy, which was about an hour after the seizure. The record from the plea hearing and testimony from his plea counsel show that Robinson understood everything that was going on during the colloquy. He confirmed under oath that he understood his rights, the nature of the charges, and the consequences of pleading guilty. He also stated that no one pressured or coerced him into pleading guilty. Despite his testimony at the motion to withdraw hearing that he did not know he was pleading guilty, the trial court was not required to find him credible.

Robinson recognizes that the record shows that he answered questions appropriately during the plea colloquy, but argues that

the record "is just a cold, hard transcript." True enough, but our review on appeal is necessarily limited to the record on appeal, which is why we afford so much deference to the trial court's findings of fact and credibility determinations. See *State v. Franklin*, 318 Ga. 39, 39 (2024) (it is the "prerogative of the trial court to resolve disputes of material fact"); *State v. Abbott*, 303 Ga. 297, 302 (2018) ("[W]e [generally] owe substantial deference to the way in which the trial court resolved disputed questions of material fact[.]"); see also *Damani v. State*, 284 Ga. 372, 373 (2008) ("If an appellate court is to review and correct any enumerated errors, it must do so based on the record sent from the trial court[.]"). And that record belies Robinson's claim that his plea was not knowing or voluntary.

Robinson alternatively argues that the better practice would have been to secure a doctor to examine him before continuing with the guilty plea. Robinson points to no legal authority mandating this practice. More importantly, the trial court credited the testimony of plea counsel, who said that Robinson appeared fine and she would not have proceeded with the plea had she thought otherwise. The

10

failure to obtain a medical consultation, by itself, does not upset the trial court's conclusion that Robinson was aware of the consequences of his plea and voluntarily pled guilty. The trial court therefore did not err in denying Robinson's motion to withdraw his guilty plea.

2. Although not raised by Robinson, in our review of his appeal, we noticed a sentencing error with respect to Count 5, which charged him with vehicular homicide, that harms Robinson and should be corrected. See *Dixon v. State*, 302 Ga. 691, 696–98 (2017) (this Court has the authority to sua sponte correct merger errors and that authority is most commonly exercised with errors that harm a defendant). Count 5 was vacated as a matter of law as a result of his felony murder conviction on Count 1, because it involved the same single homicide victim. See *Diamond v. State*, 267 Ga. 249, 251 (1996) (because the defendant was convicted of felony murder, the vehicular homicide count had to be vacated; a defendant "can be convicted only once for the death of each victim"); see also *Starks v. State*, 320 Ga. 300, 306 (2024). We therefore vacate the sentence on Count 5. Because Robinson's sentence was otherwise proper, we

need not remand this case to the trial court for resentencing. See

*Atkinson v. State*, 301 Ga. 518, 521 (2017).

*Judgment affirmed in part and vacated in part. All the Justices concur, except Land, J., not participating.*