## A06A1689. THE STATE v. HARDY.
(636 SE2d 36)

BLACKBURN, Presiding Judge.

Following a *Jackson-Denno*[1] hearing, the State appeals from the trial court's order suppressing custodial statements given by James Hardy. The State contends that the trial court erred in ruling that Hardy did not voluntarily waive his *Miranda* rights. We agree.

On appeal from a ruling on a motion to suppress, "the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review." (Punctuation omitted.) *State v. Davison*.[2] So viewed, the record shows that a police officer on truancy patrol encountered M. H., a juvenile, in a public park during school hours. As the officer spoke to M. H., Hardy called M. H.'s cell phone, and M. H. told the officer Hardy was his uncle, whom M. H. had planned to meet at the park. When M. H. could not explain his reason for meeting Hardy at the park, the officer took M. H. to the city truancy center. On their way to the truancy center, Hardy again called M. H.'s cell phone and spoke with the truancy officer, who told the caller he could pick up M. H. at the truancy center.

When Hardy arrived at the truancy center, he was unable to identify M. H.'s last name, despite telling an officer that he was M. H.'s uncle. After Hardy confessed that he was not actually M. H.'s uncle, Hardy was handcuffed and taken to the police precinct to allow police there to investigate Hardy's relationship with M. H.

Before interviewing Hardy at the precinct, an investigator learned from M. H. that Hardy had a sexual relationship with M. H. The investigator then initiated an interview of Hardy, who was still in handcuffs. Prior to asking Hardy any questions, the investigator, with another officer present, read Hardy a *Miranda* warning from a police-issued *Miranda* card. When asked if he understood his rights, Hardy stated that he did and that he wished to speak to the investigator at that time. Hardy then confessed that he had a sexual relationship with M. H.

Hardy was indicted on three counts of aggravated child molestation,[3] one count of enticing a child for indecent purposes,[4] and reckless conduct (due to his HIV positive status).[5] Prior to trial, Hardy moved to suppress the statements he made to the investigator, arguing that he did not freely and voluntarily waive his *Miranda*

---

[1] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[2] *State v. Davison*, 280 Ga. 84, 85 (1) (623 SE2d 500) (2005).

[3] OCGA § 16-6-4.

[4] OCGA § 16-6-5.

[5] OCGA § 16-5-60.

rights prior to speaking with the investigator. Following a *Jackson-Denno* hearing, the trial court granted the motion, giving rise to this appeal pursuant to OCGA § 5-7-1 (a) (4).

The State contends that, based on the totality of the circumstances surrounding Hardy's *Miranda* waiver, the trial court erred in concluding that Hardy did not voluntarily waive his *Miranda* rights. We agree.

"Whether there was a knowing and voluntary waiver of rights depends upon the totality of the circumstances." *Bishop v. State.*[6] See *Woodard v. State.*[7]

Here, the investigator testified without contradiction or challenge that, during the *Miranda* process, Hardy spoke clearly and did not slur; Hardy did not appear to be under the influence of drugs, alcohol, or medication; Hardy appeared to be a young adult (Hardy was 31 years old at the time of the interview); Hardy appeared to understand what was read to him; Hardy was not threatened or coerced in any way; Hardy appeared "very calm"; Hardy was not promised anything by police in exchange for his cooperation; Hardy did not appear to have any "mental issues"; Hardy had only been detained for approximately 20 minutes before he was *Mirandized*; and Hardy asked the investigator "to come back to speak with him" after a brief interruption in the interview following the *Miranda* warning. A second officer testified that he witnessed the *Miranda* warning and that Hardy waived his rights after hearing the warning. Hardy did not provide testimony or other evidence at the hearing.

Despite this evidence and without citing any conflicting evidence, the trial court ruled that Hardy did not voluntarily waive his *Miranda* rights. The trial court based its ruling on three faulty premises. First the trial court found significant that Hardy's waiver was not written down or recorded electronically. However, "the mere fact that there was no written waiver of *Miranda* rights or other written record of such waiver did not render his statement inadmissible." *Thomas v. State.*[8] Likewise, the officer's failure to electronically record Hardy's waiver does not render Hardy's waiver involuntary. See *Coleman v. State.*[9]

Second, the trial court based its ruling on the fact that the investigator did not inquire into Hardy's education level or literacy. However, the investigator testified that Hardy appeared to be educated "enough to understand what I had read to him," and there was

---

[6] *Bishop v. State*, 268 Ga. 286, 287 (2) (486 SE2d 887) (1997).

[7] *Woodard v. State*, 277 Ga. 49, 50-51 (2) (586 SE2d 330) (2003).

[8] *Thomas v. State*, 268 Ga. 135, 138 (8) (485 SE2d 783) (1997).

[9] *Coleman v. State*, 189 Ga. App. 366 (1) (375 SE2d 663) (1988).

no evidence that Hardy was illiterate or uneducated. Moreover, the fact that Hardy "may have been illiterate does not render him incapable of making a valid confession," particularly because the *Miranda* warning was *read to* Hardy. (Punctuation omitted.) *Frymyer v. State.*[10]

Third, the trial court's order notes that the interrogation occurred before formal charges were filed and that the officer did not explain the nature of the charges to the defendant. However, the record shows that Hardy had already been told that he was being detained so that officers could further investigate his relationship with M. H. Moreover, as the Supreme Court of Georgia noted in *Peebles v. State,*[11]

> a law enforcement officer's failure to advise a suspect as to the crimes about which he is to be questioned prior to the suspect's waiver of his *Miranda* rights is not relevant to the question of whether the suspect's waiver was knowing and voluntary. The additional information could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature.

(Punctuation omitted.)

Therefore, in light of the totality of the circumstances in this case, and in light of the lack of any basis in the record supporting the conclusion that Hardy's *Miranda* waiver was not voluntary, the trial court erred in ruling that Hardy's *Miranda* waiver was not voluntary. Accordingly, we reverse and remand the case for further disposition by the trial court.

*Judgment reversed and case remanded. Mikell and Adams, JJ., concur.*

DECIDED AUGUST 8, 2006 —
RECONSIDERATION DENIED AUGUST 30, 2006 — 

*Paul L. Howard, Jr., District Attorney, Ayana C. Curry, Assistant District Attorney,* for appellant.

*Kathryn R. Elwart,* for appellee.

---

[10] *Frymyer v. State,* 179 Ga. App. 391, 392 (1) (346 SE2d 573) (1986).

[11] *Peebles v. State,* 260 Ga. 430, 431 (1) (396 SE2d 229) (1990) (quoting *Colorado v. Spring,* 479 U. S. 564, 576-577 (III) (A) (107 SC 851, 93 LE2d 954) (1987)).