## A10A0854. THE STATE v. FLOYD.
(702 SE2d 467)

ADAMS, Judge.

The State appeals the trial court's order granting Aubrey Floyd's motion to suppress the statement he gave police following his arrest on a charge of rape. For the reasons set forth below, we affirm.

In considering an appeal from a trial court's order on a motion to suppress,

> this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Additionally, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous.

*Schramm v. State*, 286 Ga. App. 156, 158-159 (648 SE2d 392) (2007).[1]

---

[1] The State urges us to apply a de novo review here because this Court can independently review the recorded interview. But that recording was not the only evidence before the trial court; both Floyd and Detective Tyus also testified at the motion hearing, necessitating credibility determinations by the court. Accordingly, we apply the clearly erroneous standard in this case. Compare *Franklin v. State*, 249 Ga. App. 834, 835 (549 SE2d 794) (2001) (applying de novo review where police officer's testimony and video recording of statement were only evidence).

Floyd was arrested by Atlanta police on January 1, 2008, after a 14-year-old girl accused him of rape. He was transported to the police station for questioning where Detective Carven N. Tyus interviewed him. Tyus began the interview with Floyd by first stating that he would read his rights from a "Waiver of Counsel" form. Tyus then read the *Miranda* warning from the printed form. In response to the officer's questions, Floyd indicated that he could read and write the English language and that he had attended school through the 12th grade. Floyd also confirmed that Tyus had read the form to him. At no point did Tyus ask Floyd if he understood his rights as read to him, nor did he ever ask Floyd if he was under the influence of drugs or alcohol.[2]

Tyus then handed Floyd the waiver of rights form and stated:

> Now, before we get started, before you tell me what happened out there, I want you to sign right here saying yeah I want to tell Detective Tyus what happened out there . . . [s]o we can try and get this thing cleared up. . . . Just sign right there . . . and that way you can tell me . . . what happened.

Floyd stated, "Okay, So this is what I'm being charged with?" Tyus replied, "No. What it says is that you are a suspect. . . . That just says you're a suspect. That's why I want you to tell me what happened. . . . That's why I want you to sign right there saying I'm going to tell Detective Tyus what happened out there."

Floyd signed the form, and Tyus began to question him about his interaction with the girl. Floyd initially denied touching or penetrating the girl and offered to take a DNA test to clear the matter up. In response, Tyus told Floyd he had a problem because he did not believe that either Floyd or the girl were "being entirely truthful" with him. Tyus then asked Floyd to quit deceiving him, stating, "Floyd, I need for you to look at me and say, 'Hey detective, here's what happened. Yes I went down there. Yes I had sex with this girl, but no sir I did not force her into anything and I didn't rape her.'" Floyd continued to maintain that he did not touch or penetrate the girl, but after further questioning, Floyd indicated that he had given the girl some money and they had sex for about two to three minutes.

---

[2] Tyus originally testified at the hearing on the motion to suppress that he asked Floyd if he was under the influence of alcohol or drugs and that Floyd replied that he was not under the influence at the time. That question, however, does not appear in the video record of the interview, and Tyus testified that the recording contained the entire interview, other than a conversation in which he told him "where we were going and what we were doing." Tyus later conceded that he did not ask whether Floyd was under the influence.

Floyd stated, "I hate to put myself in jail but the truth is the truth."

After Floyd was indicted on charges of rape, aggravated sexual battery, aggravated child molestation, child molestation and statutory rape, he filed a motion to suppress his statement to police.

Tyus testified at the motion hearing that there was no standard procedure for *Mirandizing* a defendant; rather "it's just [up to] each detective, as long as they're read their *Miranda* rights and they acknowledge to me aloud that they understand their *Miranda* rights and that they can understand and read and write the English language." Yet Tyus admitted that he never asked Floyd if he understood his rights, nor did Tyus ever state that he believed Floyd understood those rights other than to generally state that such understanding is implied when an accused signs a waiver form.

Tyus also stated that he never threatened or coerced Floyd nor did he make any promises about a lighter sentence. He acknowledged that Floyd said he had been drinking the night before, New Year's Eve, but Tyus stated that he appeared to be "functionally normal" during the interview, and Tyus did not smell the odor of alcohol on his person. He said that Floyd appeared to understand his questions and to give "correct answers." Floyd never indicated that he did not understand, never asked for an attorney and never asked for the interview to be terminated.

Floyd testified, however, that despite being arrested three to four times previously, he did not recall anyone ever reading him his *Miranda* rights, nor did he understand them.[3] Floyd thought he had no choice but to talk to Tyus. He stated that he did not understand what Tyus read to him. He said Tyus had two or three pieces of paper in front of him. Tyus read him something and then handed him a paper, but Tyus did not tell him that the paper "was some type of rights[;] he just told me to sign this why [sic] I can talk to you." He did not remember when he signed the waiver of rights form, but he admitted that he had signed it. Floyd said that when Tyus did not believe his version of events, he told Tyus what the officer told him to say.

Floyd also said that he had been diagnosed with post-traumatic stress disorder with psychotic symptoms, and took three separate medications on a daily basis to treat that disorder. He stated that one of these medications stabilizes his moods, another "levels me out," and the third puts him in a state like intoxication, with slurred speech and "irrational" movements. Floyd had taken these medications on the morning of the interview and had been up all night drinking the night before. Although he had also taken the drugs the

---

[3] Floyd said he did not "know the lady [the prosecutor] was talking about, Miranda."

day of the motion hearing, he believed that the alcohol he consumed the night before exacerbated the drug's effect the morning of the interview.

Based upon this testimony and a review of Floyd's videotaped statement, the trial court granted the motion to suppress and subsequently signed an order prepared by Floyd's counsel. During the motion hearing, the trial judge stated from the bench that what he saw on the video was "constitutionally deficient, what happened with . . . his rights. I mean to read those things like in 30 seconds, he says sign here, and I got a real problem." The trial court also concluded from watching the recording that when Tyus handed Floyd the waiver of rights form to sign, Floyd "thought it was his charges." Additionally, the trial court found the recording to be "incomprehensible" partially in that he could only understand about ten percent of what Floyd was saying.

The court's written order finds that the officer "read the *Miranda* warnings in a cursory manner, resulting in [Floyd's] failure to understand those rights"; instead of ascertaining whether Floyd understood those rights, Tyus simply instructed Floyd to sign the waiver form; Floyd signed the form "as a consequence of being told to do so, and not as an indication that he understood those rights and wished to waive them"; Tyus led Floyd to believe that in order to be released from custody, he would have to tell the officer that he engaged in sexual relations with the alleged victim; and the statement was induced by the hope of benefit and was not made freely and voluntarily.

"Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial, and the State has the burden of proving the voluntariness of a confession by a preponderance of the evidence." (Citation omitted.) *Wilson v. State*, 285 Ga. 224, 227 (675 SE2d 11) (2009). And "[i]n ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily." (Citation omitted.) *Humphreys v. State*, 287 Ga. 63, 73 (6) (694 SE2d 316) (2010).

The trial court's ruling reflects its conclusion that the State failed to carry its burden of proving that Floyd's statement was freely and voluntarily given. After reviewing the recorded statement and the hearing testimony, we cannot say that this conclusion was clearly erroneous. Although Tyus indicated that he wanted to inform Floyd of his rights and had a "Waiver of Counsel" form, he read the *Miranda* rights very quickly and then directed Floyd to sign the form so he could talk to the detective and "get this thing cleared up." Tyus made no effort to ascertain whether Floyd understood his rights, nor

did he ever testify that he believed Floyd understood them. When Tyus handed Floyd the form, Floyd asked whether the paper represented the charges against him. Tyus responded that the document merely said Floyd was a suspect and that he needed to sign it so he could talk to Tyus in order to clear things up. At no time did the conversation cease, allowing Floyd a clear opportunity to read the form, and it is unclear from the video whether Floyd ever read it. Thus, the trial court could have accepted Floyd's testimony from the hearing that he did not understand his rights or any waiver of those rights, and could have concluded that Floyd signed the paper handed him at Tyus's direction because he believed he had to in order to clear things up.

We find, therefore, that when the evidence is construed in favor of the trial court's ruling, at least some evidence exists to support the finding that Floyd's signature on the waiver form did not indicate that he understood his rights and wished to waive them.[4] And we cannot say it was clear error for the trial court to believe Floyd's testimony. See *Martin v. State*, 291 Ga. App. 363 (1) (662 SE2d 185) (2008) (this Court accepts trial court's factual determinations if they are supported by any evidence and will not overturn its credibility findings absent clear error). Accordingly, we affirm the trial court's order granting Floyd's motion to suppress.[5] Compare *State v. Hardy*, 281 Ga. App. 365 (636 SE2d 36) (2006) (reversing grant of motion to suppress where investigator testified without challenge that during the *Miranda* process, defendant appeared to understand what was read to him).

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 13, 2010.

*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Assistant District Attorney*, for appellant.

---

[4] Given this ruling, we need not address the trial court's additional findings that Floyd confessed to a sexual encounter with the girl in reliance upon a hope of benefit.

[5] As the State correctly argues, "the intoxication of the accused does not automatically invalidate his or her waiver of *Miranda* rights. . . ." See *Stanley v. State*, 283 Ga. 36, 40 (656 SE2d 806) (2008). See also *Forehand v. State*, 271 Ga. App. 746, 747 (611 SE2d 78) (2005) ("intoxication, standing alone, does not render a statement inadmissible. If the evidence is sufficient to establish that the defendant's statement was the product of rational intellect and free will, it may be admitted even if the defendant was intoxicated when he made the statement.") (citation, punctuation and footnote omitted). Although evidence existed that Floyd had taken medication prior to the interview, along with extensive drinking the night before, and such factors could be considered among the totality of circumstances, the trial court made no specific finding as to intoxication and did not expressly rely upon that factor in granting the motion. Accordingly, we need not address the issue on appeal.

*Jennifer Lubinsky, Dasha M. Jackson*, for appellee.